### INTERNATIONAL NAV. CO. v. SEA INS. CO., Limited.

#### (District Court, E. D. New York. May 14, 1903.)

1. MARINE INSURANCE—EXPENSES ARISING FROM STRANDING—LAW GOVERNING APPORTIONMENT.

   A valued English insurance policy on a ship contained a provision that "general average, salvage and special charges, as per foreign custom, payable according to foreign statements, or * * * per rules of port of discharge, * * * at the option of assured." *Held*, that under such provision the law of New York, the port of discharge, governed as to the amount payable by the insurer on account of salvage and other expenses arising from stranding; and statements of the adjusters there fixing the amount of the loss and distributing the same to the several policies, in accordance with the law of the port, which requires the insurer to pay in the ratio of the loss to the stipulated or policy value of the vessel, instead of in the ratio of the loss to the actual value, as by the English law, were conclusive on the insurer.

In Admiralty. Action on marine policy of insurance.

Robinson, Biddle & Ward (H. G. Ward, of counsel), for libelant.

Butler, Notman, Joline & Mynderse (Wilhelmus Mynderse, of counsel), for respondent.

THOMAS, District Judge. The question is whether an English insurance policy on a vessel should bear the expenses arising from stranding in the ratio of the loss to the actual value, which is the English rule (Balmoral Company, Ltd., v. Marten, 2 Q. B. [1900] 748, affirmed in Court of Appeals, L. R. 2 K. B. [1901] 896, affirmed in House of Lords, L. R. App. Cases [1902] 511), or in the ratio of the loss to the policy value, according to the rule at New York, the port of discharge (International Navigation Company v. Atlantic Mutual Ins. Company [D. C.] 100 Fed. 304, affirmed in 108 Fed. 987, 48 C. C. A 181). In the last case the loss and expenses of the stranding were found to be: (1) For salvage and interest (salvage found by Judge Brown, 83 Fed. 104, affirmed 86 Fed. 340), $135,937.22; (2) for legal expenses, $5,071.64; (3) for repairs and attendant expenses, $107,368.42—total, $248,377.28—which the adjusters at the port of New York apportioned to the foreign and domestic insurers according to the law of New York. In charging the American insurers according to the rule in New York, the learned judge decided (International Navigation Company v. Atlantic Mutual Ins. Company [D. C.] 100 Fed. 304) that such losses were recoverable in the first instance from the insurers, independently of any general average adjustment, and that the insurers, upon payment, would be enabled by subrogation to

¶ 1. Marine insurance, general average, see note to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.

pursue remedies for contribution, which might exist in favor of the interest insured against other interests. From this it appears that average adjustment in absence of stipulation places no restraint upon the assured, and in no wise affects the contract of insurance. The present policy states that "the said steamship, for so much as concerns the assured and the assurers in this policy, is and shall be valued at £275,000." This stipulation and other provision of the policy plainly state an agreement that of itself necessitates the application of the New York rule above stated. But assuming that the policy is not, by such language, excluded from the English law, there is a further provision that determines the applicability of the law of New York. The policy provides:

"General average, salvage and special charges, as per foreign custom, payable according to foreign statements or per York-Antwerp rules, or York-Antwerp rules of 1890, or per rules of port of discharge, if in accordance with contract of affreightment, at the option of assured; and in the event of salvage, towage, or other assistance being rendered to the vessel hereby insured, by any vessel belonging in part or in whole to the same owners, it is hereby agreed that the value of such services (without regard to the common ownership of the vessel) shall be ascertained by arbitration in the manner above provided for under the collision clause, and the amount so awarded, so far as applicable to the interest hereby insured, shall constitute a charge under the policy."

The respondent is understood to admit that under this stipulation the insurer is bound by all acts done by the adjusters within their jurisdiction and pursuant to the law of the locality. It concedes that it may not dispute: (1) The disposition made of the various items of loss by the adjusters. For example, if the adjusters regard a loss as general or particular average, their conclusion is final. (2) That the relative amount of loss that each class of property, ship, freight, or cargo, shall bear, is determinable finally by the adjusters alone. But the respondent disputes the power of the adjusters to determine what proportion of the loss thus imposed upon the ship or cargo shall be paid by the insurer thereof. The respondent's theory is that the adjusters have power to ascertain the loss and the items composing it, and to distribute the loss to the different interests, but not to determine what portion thereof any insurance company shall pay, but that such payment shall be controlled by the terms of the policy interpreted pursuant to the applicable law. It is undoubted that, where the policy contains similar provisions, such as "general average as per foreign statement," the insurer is bound by the statement of the foreign adjusters as to whether losses are general or particular average or neither, and as to the distribution of the losses, however much such statement differ from the custom and law at any other place. Mavro v. Ocean Ins. Company, L. R. 9, 2 Asp. Mar. Cas. N. S. 361; Williams v. Association (not reported); De Hart v. Compania Anonima, Reports of Commercial Cases, vol. 8, pt. 1, p. 42; Harris v. Scaramanga, 1 Asp. Mar. Cas. p. 344.

But it is considered that the respondent imposes too narrow limits on the stipulation in the present instance. The provision is that "general average, salvage, and special charges, as per foreign custom" (that is, ascertained pursuant to foreign custom) shall be paid "accord-

ing to foreign statements * * * or per [according to] rules of port of discharge." The provision is not only for adjusting losses according to foreign custom, but also for payment of losses by the insurer according to the rules of the port of discharge. The dominant rule at the port of New York, the port of discharge, is the law, and that law is that the insurer under a valued policy shall pay in the ratio of the loss to the stipulated value. The adjusters in the present instance have not only followed the custom of the port in so stating and distributing the loss to the policies, and appointing the amount that each policy should bear, but have in doing this observed the law of the port to which all custom and rules are amenable. In International Nav. Company v. Atlantic Marine Ins. Company (D. C.) 100 Fed. 317, Judge Brown stated:

"By the ordinary rule, general average adjustments are to be made and paid according to the law of the port of discharge; and these policies contain a clause providing that general average shall be payable (at the option of the assured) according to the rules of the port of discharge; so that the New York rule must govern in this case. Any analogy, therefore, based upon the payment of average contributions by insurers at this port, sustains the libelant's contention for full payment, rather than the defendants'."

Inasmuch as the adjustment is made pursuant to the custom, rules, and law of the port, it binds the respondent as to the scope and nature of the losses. Inasmuch as the respondent promised to pay according to the "foreign statements" or the "rules of port of discharge," the statement and the rules and law pursuant to which the statement is made demand that payment shall be in ratio of the loss to the value stated in the policy. The rules are the law, or rest thereon. The statement follows the law. The respondent had agreed to pay pursuant to the statement or the rules. Either require the fulfillment demanded by the libelant, and both concur in such demand.

The libelant should have a decree.