## HOBSON ET AL. *v.* LORD.

A vessel bound to the United States, having loaded at one of the guano islands where clearances were not granted, was on her way to Callao for one, when she was badly injured by a collision with another vessel. Proceeding in distress to that, the nearest port, she came to anchor at the anchorage of vessels calling at that port for clearances. A survey revealed the fact

that her damaged condition was such as to require her to be unladen and extensively repaired before prosecuting her voyage. She was, therefore, removed to a hulk nearer the pier, where most of her cargo was discharged, and thence to a dock for repairs. After they were finished, she was, with reasonable despatch, reloaded, and completed her voyage. Before the delivery of her cargo, the consignees gave an average bond, whereby they agreed to pay the owner of the ship their respective proportions of the expenses and charges incurred by him in consequence of such collision, as soon as the average should be adjusted conformably to law and the usages of the port of New York. *Held*, that as the services of her crew were necessary for her preservation and safety in hauling her to and from the hulk for unloading and reloading, and in moving her while in dock undergoing repairs, their wages and provisions, during the time they were so employed, were properly allowed in general average. *Held further*, that an adjustment of the amount paid for the services, board, travelling and incidental expenses of an agent sent by the owner of the ship, in good faith, to Callao to advise and assist the master, for the benefit of the ship and cargo, having been made in conformity with the usage of the port of New York, the charge was properly allowed.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts and the assignment of errors are stated in the opinion of the court.

*Mr. William G. Choate* for the plaintiffs in error.

The law of general average obviously and confessedly had its origin in jettisons. 3 Kent's Com., 12th ed., p. 233; Lowndes on Average, 2d ed., App. A, pp. 305–309, 316, 317.

In England, the wages and provisions of the crew during a detention for the repair of the ship, even when she is compelled for the common safety to bear away to a port of refuge, are not general average. *Plummer* v. *Wildman*, 3 M. & S. 482; *Power* v. *Whitmore*, 4 id. 141; *Hallett* v. *Wigram*, 9 C. B. 580.

According to the American decisions, wages and provisions during a detention to repair (unless the cause of the injury be itself a general average loss) are not general average, except when the vessel, in a proper case of imminent peril to ship and cargo, or to the voyage, voluntarily, and to escape the peril, leaves the proper course of her voyage, and bears away to a port of refuge; because, except in that case, the wages and provisions during the detention are not given or sacrificed for the common benefit, but are bought and paid for by the stipu-

lated freight for the voyage, and the ship, in her delay for repairs, has only complied with her contract with the shipper. *Jones* v. *Ins. Co. of N. America*, 4 Dall. 246; *Kingston* v. *Girard*, id. 274; *Leavenworth* v. *Delafield*, 1 Caines's Cas. 574; *Walden* v. *Le Roy*, 2 id. 263; *Henshaw* v. *Marine Ins. Co.*, id. 274; *Penny* v. *N. Y. Ins. Co.*, 3 id. 155; *Padelford* v. *Boardman*, 4 Mass. 548; *Wightman* v. *Macadam*, 2 Brev. 230; *Ross* v. *Ship Active*, 2 Wash. C. C. 226; *McBride* v. *Marine Ins. Co.*, 7 Johns. 431; *Barker* v. *Phœnix Ins. Co.*, 8 id. 307; *Dunham* v. *Commercial Ins. Co.*, 11 id. 315; *Spafford* v. *Dodge*, 14 Mass. 66; *Thornton* v. *Ins. Co.*, 12 Me. 150; *Hause* v. *N. O. Ins. Co.*, 10 La. o. s. 1; *Potter* v. *Ocean Ins. Co.*, 3 Sumn. 27; *Bixby* v. *Franklin Ins. Co.*, id. 46, note; *Giles* v. *Eagle Ins. Co.*, 2 Met. 40; *The Brig Mary*, 1 Sprag. Dec. 17; *The Star of Hope*, 9 Wall. 203; *Peters* v. *Warren Ins. Co.*, 3 Sumn. 400.

It was no departure from the course of the voyage to haul the vessel to the storeship for the discharge of her cargo, or from there to the dry dock to be repaired, or back again to the hulk to receive her cargo.

The custom proved is not sufficient to justify the allowance of the expenses of the special agent sent out by the owner of the ship.

*Mr. Edwin B. Smith, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Sacrifices, voluntarily made in the course of a voyage, of part of the ship, or part of the cargo, to save the whole adventure from an impending sea peril, or extraordinary expenses incurred for the joint benefit of both ship and cargo, and which became necessary in consequence of a common peril of the kind, are regarded as the proper objects of general average.

Average of the kind mentioned denotes that contribution which is required to be made by all the parties to the same sea adventure towards a loss arising out of extraordinary sacrifices made, or extraordinary expenses incurred, by some of the parties, for the common benefit, to save the ship and cargo from an impending peril.

Property not in peril requires no such sacrifice, nor that any

extraordinary expense should be incurred; and property not saved from the impending peril is not required to pay any portion of such a loss or expenditure, nor do *ordinary* losses or expenditures entitle a party to claim any such contribution from the associated interests of the adventure: from which it follows that the ship and cargo must have been in peril, and that the sacrifice must have been of a part of the ship or cargo to save the residue of the adventure, or that the extraordinary expenses must have been incurred for the joint benefit of the ship and cargo, and which became necessary in consequence of a common peril.

Where there is no peril, such a sacrifice presents no claim for such a contribution; but, the greater and more imminent the peril, the more meritorious the claim against the other interests, if the sacrifice was voluntary, and contributed to save the adventure from the impending danger to which all the interests were exposed. *Star of Hope,* 9 Wall. 229; *Fowler* v. *Rathbone,* 12 id. 114; *McAndrews* v. *Thatcher,* 3 id. 370.

Expenses to a large amount were incurred by the plaintiff in repairing the ship "Lincoln," of which he was the owner, during her voyage from one of the guano islands to Hampton Roads for orders. Her outward destination was to that island for a cargo; and she went there and received on board one thousand one hundred and ninety-two registered tons of guano, and sailed from the island on her return voyage.

Vessels loading there, if bound to the United States, are required to touch at Callao for a clearance in the homeward voyage. Clearances are not granted at the island; and she accordingly sailed for her return destination without one, intending to call at Callao for that purpose: but on the way she was badly injured by a collision with another vessel; and being in distress, and unable to prosecute her voyage by reason of such injuries, she proceeded to the port of Callao, which was her nearest port, and there came to anchor in the anchorage where vessels usually anchor when they call at that port for a clearance.

Surveys of the ship were had; and it was found that she was so damaged by the collision, that it was necessary to remove her cargo and repair the vessel before the voyage could be prose-

cuted; and it appears that it was necessary, in order to accomplish those objects, to remove the vessel from the place where she was anchored to another, a mile and a half nearer the mole or pier, to be repaired.

Heavily laden as the ship was, the repairs could not be conveniently made without first unloading the larger portion of the cargo; and with that view the ship proceeded first to a hulk at anchor a mile nearer the mole, and there discharged all of her cargo, except two hundred and fifty tons, before she went to the dock to be repaired. All the repairs ordered by the surveys were made; and it appears that all the steps taken to place the ship in the dock were judicious, and necessary and proper to execute the required repairs. Extensive repairs were made; and the finding of the court shows that the repairs, though they were of a permanent character, were necessary to enable the ship to prosecute her voyage to its termination, and that the ship, when the repairs were completed, was removed from the dock, proceeded back to the hulk, was reloaded with the cargo previously discharged, except forty-five to fifty tons, and that she successfully completed her voyage to her port of destination, where the cargo was discharged, and delivered to the defendants, who were the consignees of the cargo.

Service was made; and, the defendants having appeared, the parties waived a jury, and submitted the case to the circuit judge without a jury. Hearing was had; and the court rendered judgment for the plaintiff in the sum of $18,430.43. Immediate measures were adopted by the defendants to remove the cause into this court for re-examination.

Errors are assigned as follows: (1.) That the Circuit Court improperly allowed the wages and provisions of the crew as general average during the period the ship was delayed for repairs. (2.) That the Circuit Court improperly allowed as general average the sum paid by the plaintiff for the services and expenses of the special agent sent to assist the vessel in the port of distress.

Matters of fact need not be discussed, as they are all agreed or are embraced in the special findings of the court. Safe arrival and delivery of the cargo are admitted; and it appears that the defendants, before the delivery of the cargo,

gave to the plaintiff an average bond, in which they promised and agreed to pay to the plaintiff their respective proportions of the expenses, charges, and sacrifices made or incurred by the plaintiff during the detention of the vessel for repairs, in consequence of damage received by a collision with another vessel while proceeding towards Callao for a clearance, payment to be made whenever and so soon as the average should be adjusted conformably to law and the usages of the port of New York.

Most of the material matters of fact are embraced in the special findings of the court as follows: That the ship, on her voyage to Callao for clearance and orders, was seriously damaged in consequence of the collision; that she reached the port where she was to touch in the damaged condition described in the surveys exhibited in the record; that she was in distress, and unable to prosecute her voyage; that, in consequence of the peril, it was necessary that she should be unladen, and be extensively repaired; that the repairs were necessary in order to enable her to prosecute her voyage, and that by means thereof the voyage was prosecuted; that the repairs were made and that the vessel was reloaded with reasonable despatch; that, by reason of her damaged condition, she was compelled to leave her first anchorage ground, discharge her cargo at the hulk, about one mile from the place of her anchorage, and then to proceed to the dock for repairs, a half-mile more distant from the anchorage than the hulk; that the services of the seamen employed during the repairs of the vessel were necessary for her preservation and safety and the prosecution of the voyage; and that the amount expended for their wages and provisions was a reasonable amount; and that the expenses and salary of the special agent sent to assist the ship at the port of distress are the subject of general average, according to the customs of the port of New York.

Expenses incurred of the character mentioned, or sacrifices made on account of all the associated interests by the owners of either, to save the adventure from a common peril, constitute the proper objects of general average; and the owners of the other interests are bound to make contribution for the same, in the proportion of the value of their several interests, if it

appears that the expenses or sacrifices were induced or occasioned by an impending peril, apparently imminent; that the expenses or sacrifices were of an extraordinary character; that they were voluntarily incurred or made, with a view to the general safety of the adventure; and that they accomplished, or aided, at least, in the accomplishment of, that purpose.

Claims of the kind have their foundation in equity, and rest upon the doctrine, that whatever is sacrificed for the common benefit of the associated interests shall be made good by all the interests which were exposed to the common peril, and which were saved from the common danger by the sacrifice.

Suppose that is so: still it is contended by the defendants that the expenses incurred for the wages and provisions of the crew, and the amount paid for the salary and expenses of the agent sent by the plaintiff to assist the ship in the port of distress, were improperly included in the adjustment. They object to the charge for wages and provisions for the crew, and insist that such a charge is never general average, except when the ship, in a proper case of imminent peril to vessel and cargo or to the voyage, voluntarily, and to escape the peril, leaves the regular course of her voyage, and bears away to a port of refuge for repairs; and they advance the theory, that wages and provisions during any other detention, though the ship may be disabled by perils of the sea, are not general average, because the expenses incurred, as they insist, are not given or sacrificed for the common benefit, but that they are bought and paid for by the freight stipulated for the voyage, and that the ship, in her delay for repairs, only complies with her contract made with the shipper.

Admit the proposition of the defendants, and it follows that a claim for general average can never be maintained in any case, nor for any sacrifice or expenditure, unless the injured ship bears away, and goes to a port of refuge not in the course of her voyage. Ships going out, or returning from an outward voyage, are sometimes disabled by collision or storms in the outer harbor of the port of departure, or of the return destination; and they are sometimes disabled in the course of the voyage in the outer harbor of the port where they are accustomed to call for funds or advice, or for wood, coal, provisions,

or water: but, if the rule of decision set up by the defendants should be adopted, no party in such a case can ever be entitled to maintain a suit for general average unless the ship bears away and goes to some other port, as a port of refuge for repairs, — not even if she was voluntarily stranded to escape a much greater peril, and thereby became unable to move in any direction whatever.

Such a rule of decision is wholly inadmissible, as in many cases it would divest the claim of much or all of its equity, and make it depend upon an act entirely unimportant, and wholly unnecessary. Navigators whose ship is injured by collision or perils of the sea should bear away to a port of refuge for repairs whenever the circumstances require it; but it would be a mere act of folly to do so in a case where the disaster to the ship happened in the harbor of a port where the necessary repairs could be as conveniently and economically executed as in a more distant port, out of the regular course of the voyage.

Both commercial usage and law allow compensation for such a voluntary sacrifice or extraordinary expenditure, not because the ship at the time bore away to a port of refuge outside of the course of her voyage, but because she was *interrupted* in the course of her voyage by the disaster, and because common justice dictates, that where two or more parties are engaged in the same sea risk, and one of them, in a moment of imminent peril, makes a sacrifice to avoid the imminent danger, or incurs extraordinary expenses to promote the general safety of the associated interests, the sacrifice or expenses so made or incurred shall be assessed upon all in proportion to the share of each in the adventure.

Property at sea, as all experience shows, is often exposed to imminent perils arising from collision and fire, as well as from the violence of the wind and waves. Navigation, at best, is a perilous pursuit; and all those who follow it know full well that the owners of ships and cargoes frequently suffer disastrous losses, in spite of every safeguard and precaution which they can adopt. Equitable rules and regulations designed to avert the consequences likely to ensue from such perils, or to ameliorate the loss in case of disaster, have long been known in the jurisprudence of commercial countries, which, being founded in

the principles of equity, are entitled to be administered in the same spirit in which they had their origin.

Marine insurance is a system of that sort, and it had its origin as a measure to afford partial indemnity to the unfortunate for losses by such disasters. Allowances for salvage service are of a similar character; and the rule of proportionate contribution for sacrifices made to escape from an imminent sea peril, or extraordinary expenses incurred for that purpose, is one of equal merit and importance.

Where the disaster occurs in the course of the voyage, and the ship is disabled, the necessary expenses to refit her to go forward create an equity to support such a claim, just as strong as a sacrifice made to escape such a peril, if it appears that the cargo was saved, and that the expenses incurred enabled the master to prosecute the voyage to a successful termination. Contribution is enforced in such a case, not because the ship when injured bore away to a port outside of the regular course of the voyage, but because the principles of equity, common justice, and the usages of commerce, require that what is given by one of the associated interests " for the benefit of all shall be made good by the proportionate contribution of all." *McAndrews* v. *Thatcher*, 3 Wall. 367; *Barnard* v. *Adams*, 10 How. 270; 2 Arnould on Ins., 784.

Equity requires, that, in such a case, those whose effects have been preserved by the sacrifice or extraordinary expenditure of the others shall contribute to such voluntary sacrifice or expenditure; and commercial policy, as well as equity, favors the principle of proportionate contribution, as it encourages the owner, if present, to consent that his property, or some portion of it, may be cast away or exposed to peculiar and special danger to save the adventure and the lives of those on board from impending destruction. Such an owner, under such circumstances, has a lien upon the property saved from the imminent peril, to enforce the payment of the proportionate contribution for the sacrifice made or the extraordinary expenses incurred.

Proper repairs were made in this case; and the ship, having been refitted and reloaded, prosecuted her voyage to its termination. Safe arrival, with the cargo on board, is admitted;

and it appears that the owner of the ship demanded the payment of the proportionate contribution before delivering the cargo, and that the defendants, in order to obtain such delivery, gave the plaintiff the average bond exhibited in the record. Enough appears in the terms of the bond to show that the defendants did not controvert the right of the plaintiff to claim a proportionate contribution. Instead of that, the recital admits the collision; that the ship sustained damages which made it necessary to discharge the cargo, and refit; that sundry expenses and charges were incurred; and that various sacrifices were made which are the subject of a general average, and which should be borne by the property at risk as a common charge in contribution.

Nothing could be more explicit than the language of that recital; and the defendants promise and agree to pay to the plaintiff whatever sums may be found due from them for their proportion of such expenses, charges, and sacrifices as have arisen in consequence of the disaster, whenever and so soon as the average shall be adjusted conformably to law and the usages of the port of New York.

They admit the disaster, that sacrifices and expenses were made and incurred, that the sacrifices and expenses are the subject of general average, and promise and agree to pay the proportionate contribution so soon as the same shall be adjusted conformably to law and the usages of the port where the voyage ended. Plainly they admit that there is no merit in the present defence; for if it be true that such a claim cannot arise unless the vessel bears away to a port of refuge outside of the regular course of her voyage, then it follows that the plaintiff is not entitled to recover any thing. Inconsistencies of the kind cannot be overlooked in such an investigation, as they tend very strongly to show that the defence is unsound both in law and in fact.

Judgment was rendered in this case for the plaintiff, and it is now admitted that the judgment is correct, for the sum of $14,075.77, including·interest; whereas, if the defence set up to the two sums in controversy is a valid defence, the plaintiff is not entitled to any contribution whatever. Expenses during the interruption of the voyage, incurred by the master for the

wages of the officers and crew to the amount of $3,917.18, were also allowed by the Circuit Court, and were included in the judgment; and those expenses, in the judgment of the court, are just as proper as the charge for the expenses of unloading and reloading the cargo, which, it is admitted, is a proper charge.

Temporary repairs of damages arising from extraordinary perils of the sea, made at some intermediate port, for the purpose of prosecuting the voyage, if the damage to the ship was of a character to disable her and to interrupt the voyage, are the proper object of general average. Phillips on Ins., 5th ed., sect. 1300.

Repairs in such cases, if necessary to remove the disability of the ship to proceed on her voyage, are now everywhere regarded as the proper object of proportionate contribution; but expenses incurred for repairs, beyond what is reasonably necessary for that purpose, are not so regarded, because it is the duty of the owners, except in case of disaster, to keep the ship in a seaworthy condition. *Fowler* v. *Rathbone*, 12 Wall. 117; *Star of Hope*, 9 id. 236.

Sea perils which result in damage to the ship to such an extent as to interrupt the voyage, and disable her from pursuing it, necessarily involve delay and extraordinary expenses; and this court held, in the case last cited, that the wages and provisions of the officers and crew in such a case are general average, from the time the disaster occurs until the ship resumes her voyage, unless it appears that proper diligence was not used in making the repairs.

Necessary repairs to the ship, except to the extent that such repairs are required to replace such parts of the ship as were sacrificed to save the associated interests, or to refit the ship to enable her safely to resume the voyage, are not to be included as general average by the adjuster; but the wages and provisions of the officers and crew during the consequent and necessary *interruption* of the voyage, occasioned by the disaster, are a proper charge for such proportionate contribution, wholly irrespective of the question, whether the ship bore away for repairs to a port of refuge outside of the regular course of the voyage, or whether the necessary repairs were executed in the

port where the disaster occurred.  Masters may well consult convenience and economy in selecting the port for making repairs; and if, in the particular case, the master exercises good judgment in making the selection, no interested party will have any right to complain.

Argument to show that the services of the crew were necessary, during the period the voyage was interrupted, is quite unnecessary, as the findings of the court dispose of that question in the affirmative; from which finding it appears that as many men as were employed on board were actually necessary for the safety of the ship, in hauling her to and from the hulk on surf-days, and in moving the ship while in dock during the repairs.  Apart from that, the court also finds that it was necessary that the men employed should be sailors, able to haul the ship out at any moment when there was surf; and that the services of the sailors employed during the repairs of the vessel were necessary for her preservation and safety, and to refit her for the prosecution of the voyage.

Where the disaster occurs in the open ocean, away from any port where repairs can conveniently be made, it often becomes necessary that the ship shall bear away to a port of refuge more or less distant from the usual course of her voyage; and it is unquestionably correct to say that the deviation in such a case is justifiable.  Reported cases of the kind are quite numerous; and courts of justice, in disposing of such controversies, not infrequently refer to the bearing away of the ship as *marking the time* from which to compute the extraordinary expenses incurred in refitting the ship to prosecute the voyage.  Examples of the kind are found in the decisions of this court, of which one of a striking character may be mentioned, where the court say that the wages and provisions of the master, officers, and crew, are general average from the time of putting away for the port of succor, and every expense necessarily incurred for the benefit of all concerned during the detention.  *Star of Hope*, 9 Wall. 236.

Reference to the bearing away of the ship is there made solely to *mark the time* when the expenses commenced to be general average, as is obvious from the fact that the court proceed to decide, in the same opinion, that wages and provisions

in such a case " are general average from the time the disaster occurs until the ship resumes her voyage;" which is the true rule upon the subject, if proper diligence is employed in making the repairs. Numerous examples of the kind might be given, but it is unnecessary, as there is no well-considered case where it is held that sacrifices made by one of the associated interests for the benefit of ship, cargo, and freight, to escape an imminent sea peril, or that extraordinary expenses incurred by one of the interests in such a case for the benefit of all, to refit the ship if disabled to prosecute the voyage, are not the proper objects of general average, unless the ship bore away to a port of refuge outside the usual course of her voyage.

Decided cases are referred to by the defendants, which they insist support that proposition; but the court here, after having examined each one of the cases, is entirely of a different opinion. Even the case of *Potter* v. *Ocean Insurance Co.*, 3 Sumn. 27, does not sustain the theory of the defendants. In that case, the voyage was from New Orleans to Tampico; and, it appearing that the repairs could not be made at the port of destination if the vessel should proceed there, the ship put back to the port of departure: but the case warrants the conclusion that the result would have been the same if the vessel had gone forward, and been repaired in the port of destination.

Average contribution in such cases is allowed to the party making such sacrifice or incurring such extraordinary expenses, as a measure of justice for a meritorious service, to distribute among all who were benefited by it a due proportion of what was sacrificed or expended; the principle being, that whatever is sacrificed for the common benefit of the associated interests shall be made good by all the interests which were exposed to the common peril, and which were saved from the common danger by the sacrifice.

Peculiar remedies, equitable in their nature, are given to persons engaged in navigation and marine adventures, for the reason that such pursuits are exposed to extreme dangers, and stand in need of such peculiar and equitable remedies. Contracts of marine insurance are enforced to indemnify the owner of such an adventure from a portion of his loss. Services of salvors are liberally rewarded to encourage the hardy mariners

to encounter such risks to save the property invested in such an adventure from complete destruction.

Proportionate contribution is enforced by courts of justice in cases like the present, not because the ship bore away from the course of her voyage, but because common justice requires that sacrifices made and expenses incurred by one of the associated interests for the benefit of all should be borne by all, in due proportion to the interests saved by the sacrifice or expenditure.

Contributions of the kind for expenses incurred to pay for wages and provisions of the crew, except in a very limited class of cases, are not enforced in the courts of the parent country. Their decisions in that regard, therefore, are not applicable to the present question; but, in all other respects, the rule of decision in the two countries is substantially the same. Such a condition to the right of recovery as that set up by the defendants finds no support in any reported decision in the tribunals of that country. *Moran* v. *Jones*, 7 Ell. & Bl. 532.

It appears in that case that the voyage was from Liverpool to Callao for a cargo of guano, and that the ship was driven on a bank by a storm, near the port of departure; that her cargo was discharged, and transported back whence it came; that the ship was subsequently got off and taken back to the port from which she departed, and there repaired, when she was reloaded with her cargo, and proceeded on her voyage. Attempt was made in that case to maintain that the cargo was not liable to contribute in general average, because it was separated from the ship before she was got off; but the whole court, Campbell, C. J., giving the opinion, held that the saving of the ship and the cargo was one continued transaction, and that the expenses incurred were general average, to which the ship, freight, and cargo must contribute.

Most of the expenses in that case were incurred in getting the ship off the bank, and the rest were incurred in the port of departure; and it never occurred to court or counsel that the plaintiff could not recover because the ship did not bear away to a port of refuge. *Insurance Company* v. *Parker*, 2 Pick. 8; *Merithew* v. *Sampson*, 4 Allen, 194; *Patten* v. *Darling*, 1 Cliff. 262.

Exactly the same rule was laid down in the Court of Appeals of the State of New York. *Nelson* v. *Belmont*, 21 N. Y. 38. Various questions were considered in that case; but the court laid down the rule, that where the expenses are incurred or the sacrifices voluntarily made for the safety of the ship, freight, and cargo, a general average will take place, provided the purpose of the sacrifice or expense is accomplished.

Such a cause of action, says Kent, "grows out of the incidents of a mercantile voyage;" and he adds that the duties which it creates apply equally to the owners of the ship and of the cargo; and he characterizes it as a contribution made by all parties concerned towards a loss sustained by some of the parties in interest, for the benefit of all; and he remarks, that it is called general average, because it falls upon the gross amount of ship, cargo, and freight.

Ship, cargo, and freight are undoubtedly required to contribute in such a case; and the same learned author holds that the wages and provisions of the crew, if the ship is obliged to go into port to refit, constitute the subject of general average during the detention; which, beyond all doubt, is the settled rule of the courts in this country, State and Federal. *Barnard* v. *Adams*, 10 How. 307; 3 Kent's Com., 12th ed., 235; *Barker* v. *Railroad*, 22 Ohio St. 62; *Lyon* v. *Alford*, 18 Conn. 75; *Nimick* v. *Holmes*, 25 Penn. St. 373; Emerigon, 482; *Hallet* v. *Wigram*, 6 C. B. 603; *Dilworth* v. *McKelvy*, 30 Mo. 155; Abbott on Ship., 497; *Hathaway* v. *Insurance Company*, 8 Bosw. 59.

Maritime usage everywhere is, that the port of destination, or delivery of the cargo, is the port where the average is to be adjusted. 4 Phil. Int. L., 641; *Simonds* v. *White*, 2 B. & C. 811; Pars. on Con., 6th ed., 332; *Dogleigh* v. *Davidson*, 5 Dowl. & R. 6; *McLoon* v. *Cummings*, 73 Penn. St. 108.

Universal usage designates the port of New York as the place where the adjustment should have been made; and, inasmuch as the parties so agreed in the average bond, further remarks upon the subject are quite unnecessary; and the court is of the opinion that expenses incurred for the wages and provisions of the crew were properly included in the average adjustment.

Discussion of the second objection to the adjustment is not

necessary, as the defendants are concluded by the finding of the Circuit Court. Among other things, the Circuit Court found, that when the owner of the ship sends out an agent to a foreign port, into which the ship has put in distress, to advise and assist the master, for the benefit of ship and cargo, the usage of the port of New York is, that the amount paid for the services of such agent and his board and travelling and incidental expenses are allowed in general average, without regard to the question, whether or not he reaches the port of distress in time actually to render service, provided he is sent out in good faith, with the intention that he shall render service for the general benefit. It appearing that the adjustment was made in conformity to the usage of the port in that regard, the court is of the opinion that the charge was properly allowed, and that there is no error in the record.

*Judgment affirmed.*

MR. JUSTICE BRADLEY dissenting.

I dissent from the judgment of the court in this case. It seems to me a dangerous precedent to allow contribution to the crew's wages when a ship does not deviate from her course, but is merely delayed for repairs on the route of her regular voyage. Such claims will too often be put forward, and a shipper will never know when he has done paying freight for the transportation of his property. I concede that the American rule is more liberal in this respect than the English; but I think it has never been carried so far as the present case.