CHARTER SHIPPING COMPANY, LIMITED, *v.* BOWRING, JONES & TIDY, LIMITED.

No. 397. Argued April 22, 1930.—Decided May 19, 1930.

Mr. Cletus Keating for petitioner.

Mr. Theodore L. Bailey for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Respondent, a British corporation, filed in the District Court for Southern New York a libel *in personam* against petitioner, also a British corporation, to recover a general average deposit made in London. The libel alleged that the petitioner received on its vessel, the "Charterhague," at various Gulf and Atlantic ports in the United States, shipments of rosin and turpentine for transportation to London, bills of lading for which were endorsed to the respondent. As grounds for recovery it was set up that the general average act was due to unseaworthiness of the vessel at the beginning of the voyage, unknown to respondent when it made the deposit in order to release the cargo from the general average lien.

On the libel, the general appearance and exceptions of the libelee, the petitioner here, and an answering affidavit setting up that after the libel in the present suit was filed respondent commenced suit in England involving the same subject matter, the District Court dismissed the libel, saying that contribution for general average is to

be determined by law of the port of discharge and that " under all the circumstances " jurisdiction should be declined. The Court of Appeals reversed, holding that the jurisdiction should have been retained. 33 F. (2d) 280. It pointed out that the suit did not involve a restatement of a general average adjustment and said that if the bills of lading contained a " Jason clause " or incorporated the provisions of the Harter Act, the question of due diligence to make the vessel seaworthy would be an issue in the case, citing *The Jason,* 225 U. S. 32; *The Edwin I. Morrison,* 153 U. S. 199; *Hurlbut* v. *Turnure* (D. C.) 76 Fed. 587, aff'd 81 Fed. 208; *Trinidad Shipping Co.* v. *Frame, Alston & Co.,* 88 Fed. 528; that the rule that general average is controlled by the law at the port of destination was consequently an insufficient reason for declining jurisdiction, and, in view of the statement of the affidavit that there were American witnesses as to seaworthiness, concluded that it was expedient under all the circumstances for the court to retain jurisdiction. This Court granted certiorari, 280 U. S. 545.

The retention of jurisdiction of a suit in admiralty between foreigners is within the discretion of the District Court. The exercise of its discretion may not be disturbed unless abused. *The Belgenland,* 114 U. S. 355, 368; *The Maggie Hammond,* 9 Wall. 435, 457.

The affidavit states that the bills of lading contain a clause providing for general average, but the bills of lading are not in the record and it does not appear that they embraced Jason or other clauses modifying the liability in general average. As that liability arises not from contract but from participation in the common venture, see *Hobson* v. *Lord,* 92 U. S. 397; *Barnard* v. *Adams,* 10 How. 270, 303; *The Roanoke,* 59 Fed. 161, 163; *Milburn* v. *Jamaica Fruit, &c. Co.,* (1900) 2 Q. B. 540, 550, its extent

in the absence of such limiting clauses is, under the admiralty rule, fixed by the law of the port of destination. *Hobson* v. *Lord, supra,* 411; *Mousen* v. *Amsinck,* 166 Fed. 817, 820; *Compagnie Francaise de Navigation a vapeur* v. *Bonnase,* 15 F. (2d) 202, 203; Congdon, General Average (2d Ed.) 148. Even if so limited, the extent and effect of the limitation cannot be determined apart from consideration of the rule limited.

Both the parties being British subjects and the present litigation, as well as the suit pending abroad, apparently involving the application of English law to the fund located there, it was for the District Court to say, as it did, upon a consideration of all the circumstances, whether it should decline " to take cognizance of the case if justice would be done as well by remitting the parties to the home forum." See *The Maggie Hammond, supra,* p. 457.

Even if we assume, as did the court below, that the bills of lading may have modified the liability in general average so as to put in issue the care taken to make the vessel seaworthy before sailing, we cannot say that the District Court improvidently exercised its discretion. While some witnesses as to seaworthiness were "American repairmen," it does not appear that any were in or near the southern district of New York. The libel alleges that the *Charterhague* plied as a common carrier between American ports and London where, so far as appears, her officers and crew would be available as witnesses as to the alleged unseaworthy condition of engines and boilers. It was for the District Judge to consider the facts appearing and the inferences which he might draw from them and reach his own conclusion as to the convenience of witnesses as well as the other factors upon which he decided that justice would be best served by leaving the parties to their suit in England.

*Reversed.*