**CANADA MALTING CO., Limited, v. PATERSON STEAMSHIPS, Limited.**

**BRITISH EMPIRE GRAIN CO., Limited, v. SAME.**

**STARNES v. SAME.**

District Court, W. D. New York.

Oct. 1, 1930.

On Rehearing Jan. 2, 1931.

Brown, Ely & Richards, of Buffalo, N. Y. (Laurence E. Coffey, of Buffalo, N. Y., of counsel), and Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and A. J. McElhinney, both of New York City, of counsel), for libelants.

Stanley & Gidley, of Buffalo, N. Y., for respondent.

HAZEL, District Judge.

On the night of July 9, 1930, the steamers Yorkton and Mantadoc collided in Whitefish Bay, Lake Superior, within the territorial waters of the United States. The above-entitled actions in personam were brought in this jurisdiction against the owner of the Mantadoc alone, and foreign attachments issued by

owners of separate cargoes of grain laden aboard the Yorkton which, in consequence of the collision, sank, and the cargoes totally lost. Both vessels are of Canadian registry. Libelants and respondent are foreign citizens, subjects of the Dominion of Canada. The Yorkton was loaded at Port Arthur, Ontario, where the contracts of affreightment were made, and the bills of lading issued for delivery of the cargoes at Montreal, Quebec. An action by the respondent owner of the steamer Mantadoc is pending against the claimants of the steamer Yorkton in the Admiralty Court of the Dominion of Canada to determine the fault of the collision between the two vessels and their owners. The motion herein seeks to have this court decline further jurisdiction of the pending causes, and for dismissal of the libels.

■ Concededly whether jurisdiction shall be retained is a matter of discretion, and the exercise of the discretion depends upon the facts and circumstances contained in the affidavits. See Charter Shipping Co., Ltd., v. Bowring, Jones & Tidy, 281 U. S. 515, 50 S. Ct. 400, 401, 74 L. Ed. 1008, decided by the Supreme Court May 19, 1930. The moving papers show, not only that all the parties, including the colliding vessels and their officers and crews, are citizens and residents of Canada, but also that the Dominion Wreck Commissioner has had the cause of the collision under investigation, and on the evidence before him has reached the conclusion that both vessels were equally at fault for the mishap; both having committed culpable error due to faulty interpretation of the rules of navigation and their negligent application. It is pointed out that under existing United States law, assuming a finding of mutual fault on the part of the navigating vessels, the respondent here would be held liable under Admiralty Rule 56 (28 USCA § 723) for the entire amount of the cargo damage without any effective remedy for recoupment of one-half of cargo damages against the Yorktown in this action, and, on recovery of the damages, to enforce contribution, another action would be necessary by the claimants of the Mantadoc against the owner of the Yorkton (see The New York, 175 U. S. 187, 20 S. Ct. 67, 44 L. Ed. 126; Erie R. Co. v. Erie & Western Transp. Co., 204 U. S. 220, 27 S. Ct. 246, 51 L. Ed. 450); while, on the other hand, the remission of the actions to the Admiralty Court of Canada, where the rule is the same as in England, would not in any event involve liability of respondent for more than a moiety of the cargo damage recoverable from each of the vessels found at fault.

■ It seems to me that the circumstances are such that this court is warranted in refusing to retain jurisdiction, and that no injustice will result to libelants by remitting the parties to their home forum. That the rule in this court is more favorable to the cargo owners is insufficient reason for retaining jurisdiction.

Plaintiff in opposition urges that inasmuch as the collision occurred within the territorial water of the United States, jurisdiction should not be declined, citing The Heredia v. Davies (C. C. A.) 12 F.(2d) 500, and several other adjudications. But in the Heredia Case the action was for personal injuries by a foreign seaman against a foreign ship, the injuries occurring owing to the negligence of the latter in an American port, and the court deemed it necessary to exercise jurisdiction to prevent failure of justice; while in the instant case, as said, no failure of justice would result by refusing jurisdiction and relegating the rights of the parties to the courts of their citizenship. That all the parties in interest are citizens of a foreign country, true enough, standing alone, constitutes no objection to retaining jurisdiction; but I think the reasons assigned in these cases for not doing so are meritorious. The collision of the steamships in Whitefish Bay in American waters does not, in my opinion, demand applying the law of the United States on the principle of lex loci in the determination of liability. See Charter Shipping Co. v. Bowring et al., supra, where the cause of action arose in waters at Jacksonville, Fla. In that case the Supreme Court said:

"Both the parties being British subjects and the present litigation, as well as the suit pending abroad, apparently involving the application of English Law to the fund located there, it was for the District Court to say, as it did, upon a consideration of all the circumstances, whether it should decline 'to take cognizance of the case if justice would be done as well by remitting the parties to the home forum.' See The Maggie Hammond, 9 Wall. 457, 19 L. Ed. 780. * * *

"It was for the District Judge to consider the facts appearing and the inferences which he might draw from them and reach his own conclusion as to the convenience of witnesses, as well as the other factors upon which he decided that justice would be best served by leaving the parties to their suit in England."

The case of Royal Mail Steam Packet Co. v. Companhia de Navegacao Lloyd Brasileiro (D. C.) 27.F.(2d) 1002, 1003, is cited in support of the contention that jurisdiction should be retained, but I think that in that case the circumstances were essentially different. There libelant was a British corporation and respondent a Brazilian corporation. The collision occurred in Belgian waters, and, as I read Judge Inch's opinion, he bases his determination upon the injustice that would ensue to libelant by requiring a determination in the Belgian court because the law of that country had not been revised since the World War "to bring it into line with the depreciation of the Belgian currency." The result, the learned court said, from the depreciation of the Belgian francs, together with the Belgian law limiting liability to 200 francs per gross ton, and allowing the respondent at fault to limit its liability, would enable unjustly avoiding a large part of the damages. The collision here did not occur on the high seas, as in the last-mentioned case, but occurred at a point where the inland waters narrowed to a neck, and where it may be assumed the colliding vessels proceeded in United States waters unintentionally or unavoidably. In Fairgrieve v. Marine Ins. Co. (C. C. A.) 94 F. 686, the policy of insurance on the Canadian schooner was issued in this country, and the court was of opinion that, since the validity of the contract was to be determined by the laws of this country, no rules of comity would be violated by retaining the litigation. The adjudication is believed to support respondent's contention rather than libelant's. All other citations for retaining jurisdiction are readily distinguishable from the facts here.

There is another point that bears upon the exercise of discretion, to wit, the hearing and finding of the Canadian Wreck Commissioner, the pending action in the Canadian court brought by the respondent owner of the Mantadoc against the owner of the Yorkton to determine the liability for the collision as between the vessels and their owners. It would certainly lead to complications to have the Canadian Court of Admiralty determine the liability one way, and this court another way. Such antagonistic determinations might lead to a multiplicity of actions to determine the rights and liabilities of the parties—something that should be avoided. Other arguments in favor of retaining jurisdiction have been considered but are deemed insufficient. The motion of respondent is granted, and an order on five days' notice to libelant may be entered. The order shall provide for respondent's appearance in any action brought in Canada by cargo owners and file bond for recovery of damages.

### On Application for Rehearing.

1. The word "concededly" in paragraph 2, page 803, of the opinion heretofore filed, is stricken out in view of the misunderstanding of the court as to the position of proctors for libelants in this respect.

The statement in the opinion, "The collision of the steamships in Whitefish Bay in American waters does not, in my opinion, demand applying the law of the United States on the principle of lex loci in the determination of liability," may also be eliminated. It was unnecessary to the decision of the questions submitted, and doubtless, as claimed, was an erroneous statement of the prevailing rule. Whether the ultimate facts here warrant applying a different rule need not be decided.

It is also true, as said by proctor for respondents, that the liability in general average, as held in Charter Shipping Co. v. Bowring et al., was not due to the contract but to participation in a common venture, and adjustment depended upon the law of the port of destination after arrival of the vessel. But the principle of that case, with relation to the discretionary right of the court to retain or refuse jurisdiction in view of the facts and circumstances in the instant case, is not inapplicable. On this motion for rehearing proctors for respondent point out that by treaty relations between Great Britian and the United States the boundary waters of the Great Lakes, meaning thereby the entire body of water comprising lakes, rivers, and waterways, separating the two countries, with respect to navigation have become international waterways and equally free to citizens of Canada and citizens of the United States. See Root-Bryce Treaty of 1909, and President's Proclamation of May 13, 1910 [36 Stat. 2448]; More's Digest of International Law, vol. I, p. 674).

In view of this treaty, there exists, it seems to me, additional reason for declining jurisdiction and relegating the parties to pursue their remedies and rights in the country of which they are citizens and subjects, in the place where the contract of carriage was made and performed, and, further, where the witnesses reside. But assuming, as does libelant, that the collision occurred in American waters, the contention is that this court is without power to refuse jurisdiction, since

section 24 of the Judicial Code (28 USCA § 41) confers original jurisdiction in the District Court of all causes of admiralty and maritime jurisdiction.

It was not intended to rule that in such case the court was without jurisdiction, but merely that the circumstances were such as to justify the court in declining jurisdiction. The right to take or refuse jurisdiction for special reasons is recognized in The Belgenland, 114 U. S. 355, 5 S. Ct. 860, 864, 29 L. Ed. 152, wherein instances are mentioned rendering it expedient for the court to take jurisdiction of suits between foreigners in causes "not arising in the country of the forum * * * not on the ground [the learned court says] that it has not jurisdiction, but that, from motives of convenience, or international comity, it will use its discretion whether to exercise jurisdiction or not." The phrase "not arising in the country of the forum" does not make it obligatory to retain jurisdiction if substantial reason existed for refusing it. Goldman v. Furness, Withy & Co., Ltd. (D. C.) 101 F. 467; The Iquitos (D. C.) 286 F. 383, 384; The New Texas, 1926 A. M. C. 1514. And see The Maggie Hammond, 9 Wall. page 457, 19 L. Ed. 772.

Other points presented for retaining jurisdiction need not be discussed.

The order declining jurisdiction may be entered.