60 F.2d 683 (1932)
THE SALVORE.
UNITED STATES STEEL PRODUCTS CO. et al.
v.
NAVIGAZIONE LIBERA TRIESTINA, SOCIETA ANONIMA.
AMERICAN PRINTING INK CO. et al.
v.
SAME.
Nos. 410, 411.
Circuit Court of Appeals, Second Circuit.
July 21, 1932.
*684 Single & Single, of New York City (Forrest E. Single, Loring R. Lecraw, and Frank H. Gerrodette, all of New York City, of counsel), for appellants.
Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Roscoe H. Hupper, John L. Galey, and William J. Dean, all of New York City, of counsel), for appellee.
Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.
CHASE, Circuit Judge.
Navigazione Libera Triestina, Societa Anonima, as the owner of the steamship Salvore, filed its petition for limitation and claimed exoneration from all liability for loss and damage to cargo caused by a fire which occurred on the ship while undergoing repairs at Genoa. The claimants, who have appealed from a decree exonerating the ship, contested the petition and filed claims for the fire damage to their property.
The cargo of the Salvore was loaded at Philadelphia and New York, consigned to Genoa, Naples, Palmero, Piraeus, and Salonica. Before any loading at Philadelphia, the Salvore was in collision with another ship, and was somewhat damaged above the water line. She was granted permission to load and proceed to New York for temporary repairs. She did so. At New York such repairs were made as to make her seaworthy for the voyage, though they were not permanent. The claim of deviation in repairing at New York is made, but will not be separately discussed. What is later said about repairs at Genoa, without regard to the fire, is sufficient to dispose of this contention.
She took on her New York cargo and sailed from that port for Genoa on May 12, 1926. Nothing of importance occurred on the voyage until she received a message from her owners on May 27th directing her to put into Oran on the African coast to coal. She complied and by so doing lengthened her voyage to Genoa by about 50 miles and five hours. She arrived at Genoa without mishap and began discharging the cargo destined for that port. While such unloading was being done, permanent repairs to the ship were undertaken, although they were not necessary to make her seaworthy for the completion of her voyage. They were made by a competent shipbuilding and repair company at Genoa which was an independent contractor. The work required the use of acetylene torches from which a fire started that damaged the ship and cargo. Had there been no fire, the repairs would have been completed while the Genoa cargo was being discharged and would not have delayed the ship at that port. Although the claimants have suggested a negligent cause of the fire, it was not proved. The real issue is that of deviation.
The bills of lading for a voyage to Mediterranean ports contained the following clause: "1. The carrier may substitute, or transship by any other or succeeding steamer, and the steamer with the goods on board, either before or after proceeding toward the port of discharge, may proceed to and stay at any port or places whatsoever, although in a contrary direction to or outside of or beyond the usual route to the said port of discharge once or oftener in any order, backwards or forwards, for loading, or discharging cargo, coal and passengers, or for any purpose whatsoever, and all such ports, places and sailings shall be deemed included within the intended voyage. This liberty is not to be considered as restricted by any words of this contract, whether written, stamped or printed."
When the Salvore left Philadelphia she had full bunkers and Oran is a customary Mediterranean coaling port. The Salvore did not lack adequate coal on departure as in The Willdomino, 272 U. S. 718, 47 S. Ct. 261, 71 L. Ed. 491, where the ship left the Azores with a grossly short supply for the intended voyage, nor sail as did The Maine (D. C.) 8 F.(2d) 291, without sufficient bunkers. This ship had about 270 tons of coal in her bunkers when she reached Oran. She needed about 100 tons to go from there to Genoa, and required additional bunkers to complete her voyage to Greek ports. Accordingly it was necessary for her to bunker somewhere in the Mediterranean. True it is that deviation which originally meant the wandering of a ship from the course customary for the voyage undertaken has been given a much broader significance in maritime law. The Indrapura (D. C.) 171 F. 929. But it will be found that in whatever form it has been recognized it involves some breach of contract of carriage by sea. There was here a departure from the direct course of the Salvore to Genoa. Not one long in time or space, to be sure, but we now have no occasion to consider *685 that. It is enough for present purposes to treat putting into Oran as a departure by the Salvore from her course. Did it then have the consequences incident to a deviation? The above-quoted extract from the bills of lading supplies the answer. Coaling at Oran was permitted by the wide "liberties" of the contracts under which these goods were carried, and in consequence was but the performance of a right and not the breach of a duty by the carrier.
The claim that the making of repairs at Genoa was a deviation rests on the lack of need for repairs at that port to make the ship seaworthy for the remainder of her voyage. There was no emergency, and, on the other hand, there was no contemplated delay of the voyage for repairs. We recognize the undoubted right of the shippers to have their goods carried to destination with customary expedition, The Citta Di Messina (D. C.) 169 F. 472. Yet the ship did not delay at Genoa to repair, but took advantage of the time necessary to remain there to unload to make her repairs. If so doing was not in accordance with general usage and was unreasonable as to the cargo on board, it was incumbent upon the cargo owners to show that. Otherwise no deviation occurred. The Citta Di Messina, supra. They have failed to do so. Likewise their failure to prove either that the fire was caused by the neglect or design of the shipowner, since the burden was upon them, The Folmina, 212 U. S. 362, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748, gives the ship the benefit of the fire statute (46 USCA § 182) which was incorporated in the bills of lading, Walker v. Western Transportation Co., 3 Wall. 150, 18 L. Ed. 172, The Galileo (C. C. A.) 54 F.(2d) 913.
It was claimed that deck stowage of thirty drums of ink amounted to deviation, and for this The Sarnia (C. C. A.) 278 F. 459, was relied upon. The sufficient answer is that the bridge deck space where this ink was stowed was tested and found water tight after the repairs were made at New York and was a suitable place for that cargo. The ink was destroyed by the fire at Genoa and not damaged at all by reason of its stowage. Compare The Delaware, 14 Wall. 579, 20 L. Ed. 779. The trial court correctly left general average claims to be adjusted at Genoa. Hobson v. Lord, 92 U. S. 397, 23 L. Ed. 613. See Charter Shipping Co. v. Bowring, Jones & Tidy, 281 U. S. 515, 50 S. Ct. 400, 74 L. Ed. 1008.
Decrees affirmed.