### USATORRE v. COMPANIA ARGENTINA NAVEGACION MIHANOVICH, Ltda., et al.

District Court, S. D. New York.

Aug. 1, 1942.

William L. Standard, of New York City, (Louis H. Rubinstein, of New York City, of counsel), for libellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Eugene Underwood, of New York City, of counsel), for Compania Argentina de Navegacion Mihanovich, Ltda.

BRIGHT, District Judge.

The respondent, appearing specially, asks this court to decline jurisdiction of this libel, brought by the crew of the M/T Victoria, to recover for the salvage of that vessel, and to dismiss the libel.

The libel alleges that the ship, while on voyage from South America to Edgewater, New Jersey, was twice torpedoed on April 17th 1942, about 340 miles east of Cape Hatteras; that the master ordered the ship abandoned, and the crew took to the life boats and were picked up about two days later; that they requested to be brought back to the ship after it had been completely abandoned and was derelict, rejoined the ship for the purpose of salvaging it, and finally brought it to the Port of New York in safety. It is further alleged that the torpedoing of the ship put an end to the voyage and the original employment contract of the crew, and entitled them to demand their discharge; that on July 6, 1942,

libellant and thirteen other members of the crew, quit the service of the vessel upon the refusal of its owner respondent to recognize their claims for salvage, and also because it had stopped payments of allotments, etc. The libel further states that on or about July 22, 1942, the United States Government ordered the requisitioning of the vessel on a bare-boat basis, and that such request order, when carried out, would put an end to the employment relationship between the crew and the ship and its owner; and that libellant, and those on whose behalf this suit was brought, are entitled to maintain the libel here, pursuant to general maritime laws, as well as pursuant to the provisions of Article 1311 of the Argentine Commercial Code.

A similar libel filed in this court by other members of the same crew for the same relief, has been dismissed by Judge Conger,[1] with an opinion in which is stated, in substance, that the court felt that it should accede to the representation of the Argentine Consul that the claim for salvage is governed by the Argentine law, that the libellants are at liberty to press their claim therefor in the Argentine courts, and that such claims must be presented in Buenos Aires, to the respondent company, in accordance with the terms of their contract. The court held that the libellants in that suit might have their rights adjudicated in their own courts, that they were then upon a vessel ready to take her back home, that the vessel was to sail shortly, that if jurisdiction retained here, it is more than possible that none of the libellants would be, in this country when the case was reached for trial; but that if the crew were stranded here, unable to get back, his ruling would be different.

The facts shown upon this application are in some respects different from those shown before Judge Conger. The ship has not yet sailed. It is to be requisitioned by the United States. It now appears from the affidavits submitted in opposition to this motion that, because of the dispute between libellants and the Argentinian Consul, they do not desire to return to Argentina, and each has reported to the United States Immigration authorities that he intends to sail out of American ports on vessels in aid of the Allied cause; and that the libellants here are different parties from those in the suit before Judge Conger. The affidavits further show that there is a dispute as to the terms and provisions of the Argentine law. The libellants further aver, in substance, that they do not believe they can obtain justice in Argentina and urge that jurisdiction be retained. In reply, the Consul General of Argentina submits an affidavit, practically in the same terms as in the other suit, showing that the ship is an Argentinian vessel, flying the flag of, and owned by a corporation of, that country; that the arrangements for the transfer of the vessel to the War Shipping Administration of this country is that the vessel shall be free and clear of liens. He further avers that the crew were employed under the laws of Argentina, on articles signed, and providing for their return, there; that under the Commercial Code of that country, no member of the crew can sue the vessel before the round trip is completed, except for reasons not important here, and that they are forbidden to abandon the vessel before the termination of their contract; that the question of possible recovery for salvage is governed by Argentine law, that libellants are at liberty to press their claim for salvage in the proper courts in Argentina, and are, under the law of that country, obliged to do so. He further avers that on May 9, 1942, he sent a letter to the agents for the respondent owner, notifying the members of the crew that the abandonment of the ship would cause their prosecution, that their claims must be presented in Buenos Aires to the respondent company in accordance with the terms of their contract, and requesting that each member of the crew write their acknowledgement of the letter. The letter was duly returned to him with the signatures of the members of the crew, as requested. He quotes Article 990 of the Commercial Code of Argentina, to the effect that the officers and all members of the crew who absent themselves before the voyage is finished, are, among other sanctions, liable to prison for the termination of their contracts, to return what money has been advanced to them, and to serve one month without pay.

There is no question as to the jurisdiction of this court, which I prefer to place under the general admiralty law rather than under the Argentine law. It cannot be disputed that the retention of jurisdiction is completely within the discretion of this court. Charter Shipping Co. v. Bowring, Jones & Tidy, 281 U.S. 515–

---

[1] No opinion for publication.

517, 50 S.Ct. 400, 74 L.Ed. 1008; Canada Malting Co. v. Paterson Co., 285 U.S. 413–421, 52 S.Ct. 413, 76 L.Ed. 837.

█ The sole question remaining is whether or not facts are presented which would move this court to retain jurisdiction in order that justice may be done to the libellants. There can be no question but that libellants' rights can be adjudicated in Argentina and this court cannot assume that they will not receive justice there. Ordinarily, disputes arising out of seamen's employment are referred to the tribunals of the flag. The Ester, D. C., 190 F. 216; The Falco, 2 Cir., 20 F.2d 362, 363. In the latter case, Judge Learned Hand wrote, however, that the discretion must be exercised with due regard to the circumstances; that courts are primarily established to decide the disputes of all suitors over whom they have jurisdiction, and some reason must be shown for their abdication; that if libellant had any right under the law of the sea and had been injured so that he could not go on the voyage, or if such rights were only those for which an American port could give a remedy, the libel might lie. But he concluded that the libellant there had no rights to lose and the lower court was correct in declining to assume jurisdiction. The special reasons which may move a court to retain jurisdiction exist where a seaman has been dismissed or treated with great cruelty, and also where it is obvious that here, and here only, can he obtain that measure of justice to which he is entitled.

█ It has been said that courts of admiralty have always been in the habit of entertaining suits between foreigners in case of salvage, on bottomry bonds, and for seamen's wages, when the refusal to interpose might occasion a failure of justice. In salvage cases, this jurisdiction has been less doubted than in others, because salvage is a question arising under the jus gentium and does not ordinarily depend upon the municipal laws of particular countries; that if the jurisdiction of the court is not ousted by the national character of the parties, then the property, being within the jurisdiction, this, upon common principles, is the proper court to take cognizance of the cause. In proceedings in rem, the forum rei sitae is the natural and proper forum, for it is the only one which can make its jurisdiction effectual by operating directly on the thing, The Bee, Fed.Cas. No. 1,219.

█ If the ship is taken over by the United States Government, and this libel is dismissed, and no security is posted or given to insure the payment of recovery, if the libellants are successful, they are relegated to the financial responsibility, present and in the future, of the owner which may or may not be sufficient when the litigation is ended. That would be their chance in the Argentine courts. This court has possession of the ship, and it can be made to respond, if there is a recovery.

Under the circumstances, I feel that the motion should be denied.