Thomas W. Finucane Company, Appellant, *v.* The Board of Education of the City of Rochester, Respondent.

1. Building Contract — When Saving Effected by Owner's Consent to a Change in His Specifications Belongs to Contractor. Where a provision in a building contract, providing that all finished floors should be throughly kiln dried and taken from the kiln directly to the machine and then direct to the building, was unconditionally waived and the contractor was allowed to have the flooring kiln dried in the southern states, where it was purchased and put through the planing and matching machine before being shipped to him for use, thereby securing a lower price, the owner is not entitled, in an action by the contractor, to a counterclaim for the amount saved by the builder where there is no evidence that the completed floors were inferior in any way to the floors required by the specifications.

2. Evidence Explanatory of Unambiguous Contract Inadmissible. Evidence of a conversation between the parties at the time the contract was executed is incompetent, where the provisions thereof are clear and unambiguous.

3. When Evidence of Loss of Profits Inadmissible. Evidence of loss of profits alleged to have arisen from the plaintiff's inability to do work for other parties, on account of the delay of defendant, is incompetent, where the plaintiff knew or should have known when the defendant would have been ready for him to proceed, and should have so managed his business as not to interfere with his other work.

4. When Refusal to Comply with Arbitration Clause of Contract Does Not Preclude an Affirmative Defense in an Action Thereon. A refusal by the defendant to select an arbitrator, the contract containing an arbitration clause, does not justify the exclusion of affirmative evidence on its behalf, upon the ground that before it could maintain a defense it must show compliance with such clause as a condition precedent thereto; while the refusal to arbitrate might subject, defendant to an action for damages, it cannot preclude defendant from presenting any evidence pertinent and material to the issues joined by the pleadings.

*Finucane Co.* v. *Bd. of Education,* 115 App. Div. 920, reversed.

(Argued October 31, 1907; decided November 19, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 3, 1906, modifying and affirming as modified a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James M. E. O'Grady* for appellant. The plaintiff was entirely within its rights in purchasing material for the flooring in the south as long as it conformed to the specifications, and as long as it was not forbidden so to do by the specifications. To say that the defendant can take advantage of plaintiff's superior ability in the purchase of its materials and be entitled to a reduction is unfair and unjust and illegal. (*Thomas* v. *Stewart,* 132 N. Y. 580 ; *Schnaier* v. *Nathan,* 49 App. Div. 298 ; *Langley* v. *Rouss,* 85 App. Div. 29.) The trial court

erred in excluding evidence of a conversation between plaintiff's president and the president of the defendant alleged to have taken place at the time of the signing of the contract. (*N. Y. & N. H. S. Co.* v. *Andrews,* 38 App. Div. 56.) The evidence sought to be introduced by the plaintiff of damages arising under the contract was admissible. (*Bates* v. *Holbrook,* 89 App. Div. 548; *Schile* v. *Brokhahus,* 80 N. Y. 614; *Snow* v. *Pulitzer,* 142 N. Y. 263; *Wakeman* v. *W. & W. Mfg. Co.,* 101 N. Y. 205.) The objection to any affirmative evidence being given by any witness on the part of the defendant on the ground that before they could maintain their case the defendants must show that they had complied with the terms of the contract as to arbitration as a condition precedent to any defense on their part in this action was improperly overruled. (*Smith* v. *Alker,* 102 N. Y. 87; *Heidlinger* v. *Onward,* 90 N. Y. Supp. 115; *Grant* v. *Pratt,* 97 N. Y. Supp. 29.)

*William W. Webb, Corporation Counsel* (*James M. Stull* of counsel), for respondent. The credits allowed to the plaintiff by the referee for omitted work and changes made were warranted in law and justified by the evidence. (2 Am. & Eng. Ency. of Law [2d ed.], 586; *Keeney* v. *H. Ins. Co.,* 71 N. Y. 396; *Pratt* v. *N. Y. C. Ins. Co.,* 55 N. Y. 505; *Williams* v. *Shields,* 30 N. Y. S. R. 556.) Evidence of plaintiff's alleged loss of profits was properly excluded, and in any event no harm was done plaintiff by such exclusion. (*Donald* v. *Gearhardt,* 42 App. Div. 270.) The exclusion of the conversation had between the president of the plaintiff and the president of the defendant at the time of the signing of the contract was proper. (*Kirkpatrick* v. *N. Y. C. R. R. Co.,* 79 N. Y. 240; *Mapes* v. *Snyder,* 2 T. & C. 318; 59 N. Y. 450; *Ackersloot* v. *S. A. Ry. Co.,* 30 N. Y. S. R. 146; *Daniels* v. *Paterson,* 3 N. Y. 47.) The arbitration stipulations contained in clause 18 of the contract were against public policy and void, but even if they had been valid defendant's failure to comply with plaintiff's demand for arbitration of its

claims thereunder did not preclude defendant from a determination of such claims on their merits in a court of law. (2 Am. & Eng. Ency. of Law [2d ed.], 570.)

Chase, J. The plaintiff entered into a contract with the defendant to erect the "East High School" in the city of Rochester, not including excavations and foundations therefor. After (as claimed by the plaintiff) the contract had been performed and the building completed a controversy arose between the parties as to the amount to be paid to the plaintiff in settlement of its demands. The plaintiff brought this action alleging a balance due it of $18,500 on the stipulated contract price; $3,072.74 for certain alterations in the work and $30,739 damages under paragraph 18 of the contract, which we will herein further mention.

The defendant, answering the plaintiff's complaint, denied many of the material allegations thereof, and interposed various counterclaims. The issues were referred to a referee, and he made findings of fact and conclusions of law upon which he directed judgment in favor of the plaintiff for $25,099.38 and judgment was entered thereon accordingly. The plaintiff appealed therefrom to the Appellate Division of the Supreme Court where the judgment was modified by adding a small amount in accordance with a stipulation of the respondent and as so modified the judgment was unanimously affirmed. An appeal is taken to this court, but only questions of law can be considered.

The tenth finding of fact is as follows:

"That the specifications required that all finished floors should be thoroughly kiln dried and taken from the kiln directly to the machine and then direct to the building, and only as fast as wanted for laying; that at the request of the plaintiff this provision of the specifications was waived so as to allow the plaintiff to have the flooring kiln dried in the southern states where it was purchased and put through the planing and matching machine there before being shipped here for use, and that on account of such change the expense

to the plaintiff of such floors was reduced by $7.00 per thousand feet and 101,000 feet of flooring was used in said building and that the defendant is entitled to a counterclaim against the plaintiff or to a deduction from the contract price of $707.00 on this account with interest thereon from June 1st, 1903, to this date which amounts to $66.34."

The facts stated in such finding are wholly insufficient to sustain the conclusion of law therein. The other findings negative any claim that the plaintiff failed to perform its contract so far as it relates to the floors. The counterclaim is not based upon findings that the floors were not of the material required by the specifications or that they were not planed, matched, kiln dried, laid and finished as therein provided.

The fact that the specifications, so far as they relate to the place where the flooring should be kiln dried, were waived by the defendant, and that the plaintiff was allowed to have the material kiln dried in the southern states where it was purchased, is not sufficient on which to charge the plaintiff with the amount saved by it through procuring a lower price for the kiln dried flooring in such southern states. The intention of the plaintiff in requesting the defendant to waive the provision of the specifications in regard to the place where the flooring should be kiln dried was doubtless for the express purpose of enabling it to make a better bargain for itself in purchasing such kiln dried flooring. The consent to have the flooring kiln dried in the southern states was unconditional. If, at the time the flooring was laid, it was kiln dried as contemplated by the specifications, and the completed floors are in all respects according to the specifications, there is not in the findings any basis for the counterclaim against the plaintiff.

If the defendant claimed that the flooring absorbed moisture in being transferred to the school building, or in any other way the flooring became or was injured, or that the completed floors were inferior to the floors required by the specifications, it should have shown such injuries or inferiority upon the trial and obtained a finding to that effect by the referee.

The eighteenth paragraph of the complaint is as follows: "Whatever damage or expense the contractor may suffer or be put to by reason of the owners not delivering the building on August 1st, shall be considered and paid for by the owner as an extra, and the character, amount and valuation of such extra shall be audited by the architect. In case such character, amount or valuation is not agreed to, the same shall be referred to three arbitrators to be appointed as follows: one by each of the parties to this contract and the third by the two thus chosen, and the decision of any two of such arbitrators shall be final and conclusive, and each of the parties shall pay one-half of the expense of such arbitration  *  *  *"

The purpose of that paragraph of the contract is apparent. The other parts of the contract assume that the foundations for the building will be completed by August 1st, 1901, and that the plaintiff will on that day have complete possession thereof under its contract. It provides that the plaintiff shall advance its work to certain points of completion by specified days and that the building shall be wholly completed by August 1, 1902. The contract also contained a provision as follows:

"Said contractor shall and will proceed with said work and every part and detail thereof in a prompt and diligent manner, and shall and will wholly finish said work according to said drawings and specifications, and in default thereof said contractor shall pay to the owner ten dollars for every day thereafter that said work shall remain unfinished as and for liquidated damages."

The contract was not actually signed by the parties until August 2, 1901, and the foundations were not then completed and could not be completed for some period of time thereafter. They were not completed and ready for the plaintiff until October 10, 1901. Paragraph 18 of the contract was made necessary by reason of the delay in such foundation work.

When the plaintiff's president was being examined his attention was called to paragraphs 6 and 18 of the contract and he testified that at the time the contract was executed he

had some conversation with the president of the defendant. The record then shows the following question, objection, ruling and statements :

" Q. Will you state to us what that conversation was ?

[Objected to as incompetent, irrelevant and immaterial. The contract is the best evidence of its terms and any conversation would be incompetent and immaterial if he intended to controvert or change the terms of the written contract, and if it was not intended for some such effect it would be immaterial and irrelevant.]

" Mr. O'Grady : Clause 6 of the contract seems to be without any ambiguity, but nevertheless the learned counsel and myself differ very materially as to the interpretation of it apparently from my statement of what I think it means and from what he has already stated he thinks it means and, therefore, I offer this testimony for the purpose of simply clarifying that section showing the meaning of it.

" Mr. Stull : Surely the counsel cannot make the conversation material because an opponent does not agree with him as to his construction of the meaning of it.

" The Referee : What do you contend it means ?

" Mr. Stull : I contend it means that the work should be continued in a prompt and diligent manner.

" [Objection sustained.   Exception.] "

The ruling was right.   Neither of the paragraphs of the contract mentioned were uncertain or ambiguous and the best evidence of the meaning of the parties in a plain and unambiguous written contract is the contract itself.   The court excluded other testimony offered by the plaintiff relating to its alleged loss of profits on work that it could have done except for the crowded condition of its shops arising from the storage of doors, window casings and other interior finish intended for the school building.   As the control of the building after October 10, 1901, was in the hands of the plaintiff we agree with the referee that the plaintiff knew or should have known when the doors, window casings and other interior finish to be made in its shops would be required in the

building, and it should have so directed the making of such interior finish as not unnecessarily to have interfered with its other shop work. The testimony offered to show such loss of profits if otherwise admissible was properly excluded for the reason stated.

The plaintiff also complains because the defendant failed to agree with it in referring their matters in difference to arbitrators as provided by the contract. The provisions of the contract relating to arbitration were wholly executory.

An agreement that arbitrators shall be appointed in case a controversy arises between the parties to the agreement or an agreement to arbitrate a pending controversy is subject to revocation at any time before a final submission to the arbitrators for their decision. The opinion of this court in *People ex rel. Union Ins. Co.* v. *Nash* (111 N. Y. 310) is fairly stated in the head note as follows: " Both at common law and under the Code of Civil Procedure (sec. 2383) a submission to arbitration may be revoked by any party thereto at any time before the matter has been finally submitted to the arbitrators for their decision ; and this is so although the agreement to arbitrate provides against any revocation and by its terms the party seeking to revoke for a valuable and executed consideration expressly waived and abandoned the right to revoke. Such stipulations like other executory agreements if broken simply leave the other party to seek redress by action for damages."

At the close of the plaintiff's case when the first witness was called by the defendant, counsel for the plaintiff objected to any affirmative evidence being given on behalf of the defendant on the ground that before it could maintain its defense it must show that it had complied with the terms of the contract as to arbitration as a condition precedent to maintaining any defense on its part in this action. As the defendant failed to keep its agreement in regard to arbitration the plaintiff brought this action at law to recover its damages. The parties in this, like all other actions, are entitled to present to the court any pertinent and material evidence relating

to the issues joined by the pleadings. There are no other questions that in our judgment require consideration in the opinion.

The judgment should be reversed and a new trial granted, with costs to abide the event, unless the respondent stipulates to modify the judgment by adding thereto $707 with interest thereon from June 1st, 1903, in which case the judgment, as so modified, is affirmed, without costs to either party in this court.

Cullen, Ch. J., Gray, O'Brien, Vann and Willard Bartlett, JJ., concur; Werner, J., not voting.

Judgment reversed, etc.