In the Matter of the Petition of RED CROSS LINE, Respondent, for an Order Directing ATLANTIC FRUIT COMPANY, Appellant, to Proceed to Arbitration.

**Appeal — appeal without permission from unanimous affirmance by Appellate Division proper where construction of Federal Constitution is involved — jurisdiction — Federal courts have exclusive jurisdiction of admiralty and maritime cases — arbitration — when state court powerless to compel party to contract to proceed to arbitration — Arbitration Law a statutory legal remedy.**

1. Where appellant has invoked provisions of the Federal Constitution in opposition to the granting of an order of arbitration, thereby making the provisions of the Constitution stated, as amplified by the Judicial Code, the subject of construction, its appeal, without permission, from an unanimous affirmance by the Appellate Division, is properly before this court. (Code Civ. Pro. § 190, subd. 1.)

2. The Federal judicial power extends to all cases of admiralty and maritime jurisdiction and such jurisdiction is exclusive of the courts of the several states. (U. S. Const. art. 3, § 2; Judicial Code, § 256.)

3. Where in a proceeding under the Arbitration Law (L. 1920, ch. 275) to compel arbitration, it appears that the dispute is one of jurisdiction by the admiralty court, a state court is powerless to order a party to proceed to arbitration notwithstanding a clause of the contract provides for the arbitration of disputes arising thereunder.

4. Section 3 of the Arbitration Law, providing for enforcement of a contract to arbitrate, is a statutory legal remedy of a character unknown to the common law, and, therefore, is not embraced within the exceptions contained in the Judicial Code saving to suitors in all cases the common-law remedy where the common law is competent to give it.

*Matter of Red Cross Line* v. *Atlantic Fruit Co.*, 199 App. Div. 961, reversed.

(Argued March 2, 1922; decided May 31, 1922.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 9, 1921, which unanimously affirmed an order

of Special Term directing the appellant herein to proceed to arbitration and to appoint its arbitrator pursuant to the provisions of chapter 275 of the Laws of 1920.

November 28th, 1919, the petitioner, Red Cross Line, respondent, and the appellant, Atlantic Fruit Company, entered into a written agreement of charter party wherein appellant was described as " chartered owners " of the steamship *Runa* and referred to as " owners," and the respondent " Red Cross Line " was designated as " charterers."

By the terms of the charter party the owners let and the charterers hired the steamship *Runa* from the time of delivery at Philadelphia, Pa., with sufficient bunkers to take the steamer to New York, for one round trip between New York and any safe port or ports in Canada or other British possessions not north of the St. Lawrence river.

The owners covenanted to provide and pay for all provisions, wages and consular shipping and discharging fees of captain, officers, firemen and crew, pay for the insurance of the vessel, also for all engine room and deck stores and maintain the vessel in a thoroughly efficient state. The charter party provided that in the event of loss of time from deficiency of men or stores, breakdown of machinery or damages preventing the working of the steamer for more than twenty-four hours at sea the payment of hire should cease until service was resumed, and should the vessel, in consequence, put into any port other than that to which it was bound, the port charges, etc., should be borne by the " owners; " further, that if any loss of time occurred from crew or stores not being on board in time, repairs not being complete after cargo and coals on board and hour of sailing had been fixed by " charterers " and notice given to captain, the time was lost to the " owner's " account.

The " charterers " covenanted to pay and provide for all the coal, port charges, pilotage agencies and commissions and for the use of the vessel twenty-five thousand

dollars per calendar month and at the same rates for any part of a month until delivery of the vessel to owner (unless lost), payment to be made in cash half monthly in advance from the date of delivery of steamer, also for all the coal in steamer's bunkers on delivery, the owners to pay for all coal left in bunkers on redelivery of ship at port where redelivered. In default of payment of hire the " owners " had the right to withdraw the steamer from the service of " charterers " without prejudice to any other claims under the charter.

Further provisions of the charter party were: " The captain shall prosecute his voyage with the utmost dispatch."

" That should any dispute arise between owners and charterers the matters in dispute shall be referred to three persons in New York, one to be appointed by each of the parties hereto and the third by the two so chosen; their decision, or that of any two of them, shall be final and for the purpose of enforcing any award, this agreement may be made a rule of court."

A dispute and controversy arose between the parties. On April 8th, 1920, the " charterers " demanded that the " owners " join with the " charterers " in an arbitration of said dispute as provided by the charter party. The " owners " refused to accede to the demand and thereupon the present proceeding was instituted under chapter 275, Laws of 1920, for an order directing the " owners " to appoint its arbitrator and proceed to arbitration as provided for in the charter party contract.

The petition presented to the court set out in full the charter party contract and in substance as to dispute and controversy between the parties, the following:

(a) That the steamer cleared from the port of New York for the port of St. Johns, normally an eight-day run from New York, on December 6th, 1919, and was ready to proceed in the evening of that day and the master was ordered so to do by the " charterers," but refused

to proceed until the following day, December 7th, 1919, a needless delay of twelve hours, and the master did not, as required by the charter party, "prosecute said voyage with the utmost dispatch."

(b) That when within approximately one hundred miles of St. Johns, Newfoundland, the port of destination, the master turned the steamer about and proceeded to the Azores, distant from St. Johns about thirteen hundred miles, where the *Runa* was kept by the master for twenty-one days until January 5th, 1920, and finally arrived at St. Johns on January 14th, 1920, and that thirty-nine days were consumed on the voyage from New York to Newfoundland, instead of eight days, the normal running time.

(c) That the steamer consumed an excess quantity of coal exceeding two hundred ninety-eight tons over the amount reasonably required.

(d) That petitioners in ignorance of the true state of facts until after the return of the steamer and in view of the right of the fruit company under the charter contract to withdraw the steamer from the service of petitioner unless the hire of the same was paid in advance, paid to the "owners" under protest, charter hire, cost of fuel and other disbursements aggregating $35,256.96 which the fruit company after demand has refused to repay and which items and over-payment constitute a dispute and controversy between the parties.

The answer to the petition filed by respondent denied:

(a) That the master did not prosecute the voyage with the utmost dispatch, viz., in leaving New York on the evening of December 6th, and affirmatively alleged that the pilot appointed by the pilotage authorities in the port of New York pursuant to law refused to take the steamship *Runa* out to sea on the evening of December 6th, 1919, on the ground that it was not safe to do so.

(b) Denied that the steamer as alleged was turned

about and proceeded to the Azores, kept there by the master for a period of twenty-one days, finally arriving at St. Johns, January 14th, 1920, and that an excess quantity of coal was taken aboard the steamer.

(c) Denied knowledge or information sufficient to form a belief that the " charterers " were ignorant of the true state of facts alleged until after the redelivery of the steamer and that in order to protect its rights paid to the owner the charter hire, cost of fuel and other disbursements.

(d) Denied that any amount is due the respondent.

(e) Admits that a dispute and controversy has arisen and exists between the parties and its refusal to arbitrate the same.

As an affirmative defense and answer it was alleged:

That the dispute or controversy between the parties set forth in the petition and answer being one arising out of a charter party is a maritime dispute and is a cause of " admiralty and maritime jurisdiction " over which causes the United States courts are clothed with exclusive jurisdiction pursuant to the Constitution of the United States, and that the statute of this state, chapter 270, Laws of 1920, provides an additional remedy unknown to the common law for the settlement of disputes by compelling parties to arbitrate them, if they have agreed to do so; that such a remedy is not applicable to disputes within the admiralty and maritime jurisdiction of the United States courts.

That the steamship *Runa* was not owned by appellant but chartered by it under a charter party like unto the one in the present case from Hage Waage, a Norwegian, and under the charter the entire navigation of the steamship was under the control of the master, officers and crew appointed and employed by Waage, the true owner, and not by appellant, and any fault or neglect was the omission or fault of the owner Waage and not of appellant; that under the law and practice of the United States

courts in admiralty a remedy exists in appellant in a suit in admiralty to bring in a party ultimately liable and in case such party is a non-resident attachment may issue against his property; therefore, the United States court where all parties interested may be heard is the proper tribunal for adjustment of the rights of all parties in one action.

*John W. Crandall* and *E. F. Rapallo* for appellant. The order appealed from finally determined an action or special proceeding where the construction of the Constitution of the United States is directly involved. (*Meacham* v. *Jamestown & Co.*, 211 N. Y. 346; *U. S. Asphalt R. Co.* v. *T. L. P. Co.*, 222 Fed. Rep. 1006; *Insurance Co.* v. *Morse*, 20 Wall. 457; *Doyle* v. *Insurance Co.*, 94 U. S. 535; *Morewood* v. *Enequist*, 23 How. [U. S.] 491; *Dunbar* v. *Weston*, 93 Fed. Rep. 472; *The Moses Taylor*, 4 Wall. 411; *Chelentis* v. *Luckenbach*, 247 U. S. 372; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Hine* v. *Trevor*, 4 Wall. 555; *Brookman* v. *Hamill*, 43 N. Y. 554.)

*Homer L. Loomis* and *Reginald B. Williams* for respondent. The appeal should be dismissed. (*E. S. I. Mining Co.* v. *Hanley*, 205 U. S. 225; *Matter of Haydorn* v. *Carroll*, 225 N. Y. 84; *People ex rel. Moss* v. *Supervisor*, 221 N. Y. 367.) The remedy provided by the statute applies to and enforces the specific agreement to arbitrate and does not apply to or enforce the rights alleged in the controversy to be arbitrated. A remedy to enforce the agreement to arbitrate is not one to enforce a maritime contract. A remedy provided in a state court that makes available a remedy for the settlement of a maritime controversy through the specific enforcement of an agreement for that remedy is not an infringement of the jurisdiction of the admiralty court. (*Berkowitz* v. *Arbib*

& *Houlberg*, 230 N. Y. 261; *Matter of Division 132*, 196 App. Div. 206; *Atlantic Fruit Co. v. Red Cross Line*, 276 Fed. Rep. 319; *Jacobus v. Colgate*, 217 N. Y. 235; *The Perseverance*, 19 Fed. Cas. 308; *N. P. S. S. Co. v. Hall Bros. Co.*, 249 U. S. 119; *Plummer v. Webb*, 4 Mason, 380; *The Sirius*, 65 Fed. Rep. 226; *P. S. Co. v. Leatham, etc., Co.*, 151 Fed. Rep. 440; *Marquardt v. French*, 53 Fed. Rep. 603.)  The remedy provided by the statute is constitutional because it is the common-law remedy of specific performance if it enforces the agreement to arbitrate even although this agreement should be considered maritime, and would be the common-law remedy of arbitration originating in the agreement of the parties if it could be considered as a remedy for the settlement of controversies.  (*Hine v. Trevor*, 4 Wall. 555; *Chelentis v. Luckenbach S. S. Co.*, 247 U. S. 372; *The Moses Taylor*, 4 Wall. 411; *Knapp, Stout & Co. v. McCaffrey*, 177 U. S. 638; *Berton v. Tietjen & Lang D. D. Co.*, 219 Fed. Rep. 763; *Steamboat Co. v. Chase*, 16 Wall. 522; *Union Fish Co. v. Erickson*, 248 U. S. 308; *Watts v. Camors*, 115 U. S. 353.)  The controversy here to be arbitrated is itself not a maritime controversy and is one over which admiralty has no jurisdiction.  (*U. T. & L. Co. v. N. Y. & B. T. Line*, 185 Fed. Rep. 386.)

Hogan, J.  Section 2, article 3 of the Federal Constitution provides:  " The judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction."

The Judicial Code confers upon the District Courts original jurisdiction of all civil causes of admiralty and maritime jurisdiction saving to suitors in all cases the right of common-law remedy where the common law is competent to give it.  Section 256 of the Judicial Code provides: " The jurisdiction vested in the courts of the United States * * * shall be exclusive of the courts of the several states."

The appellant having invoked the foregoing provisions of the Federal Constitution in opposition to the granting of an order of arbitration and thereby made the provisions of the Constitution stated, as amplified by the Judicial Code, the subject of construction, the appeal is properly before this court. (Code Civ. Pro. § 191, subd. 1.)

By reason of an alleged breach of contract of a charter party contract by the owner of a steamship, and a clause contained in said contract that any dispute or controversy between the parties thereto shall be determined by arbitration, the charterers have thus far sustained an order of the Supreme Court directing the owner to proceed to arbitration as provided in the Arbitration Law. The fundamental question to be determined upon this appeal is whether or not the controversy between the parties is one of admiralty or of state jurisdiction. If the dispute be one of jurisdiction by the admiralty court, the state court was powerless to order the owner to proceed to arbitration notwithstanding the clause of the contract providing for the settlement of disputes arising thereunder.

In a consideration of the question as to the jurisdiction of the Supreme Court we must examine the petition and answer thereto used upon the application for the order directing arbitration and determine therefrom the subject-matter of the charter party contract and the nature of the controversy to be submitted to arbitration. A repetition of the language of the contract and of the petition and answer is unnecessary. A synopsis of the provisions of the instrument is set forth in the statement preceding our conclusions and discloses that the subject-matter of the contract is the use of a steamship and transportation of a cargo from the port of New York to a port of Newfoundland, consequently the contract pertains to navigation. By the allegations of the petition and of the answer is presented the questions: Is the owner of a steamship under charter liable to charterers

for delay in sailing from a port when a duly licensed pilot, under pilotage laws, believes it unsafe to take the vessel to sea? Is the master of a steamship justified in turning the steamship about and proceeding temporarily to a port other than the port of destination? Necessarily an answer to the questions is dependent upon the facts and circumstances surrounding the refusal of the pilot to immediately take the vessel to sea, the act of the master of the vessel in turning the vessel from its course and proceeding to the Azores and the reasonableness or necessity of the alleged delay at the latter port. We may assume that the condition of the weather, the seaworthiness of the steamship, the existing situation at the time of the deviation of the vessel from its course and the safety of the steamship and cargo would have an important bearing upon the questions propounded; therefore, the subject of the controversy existing between the parties is clearly one pertaining to navigation; consequently, the question of liability or non-liability of the owner to the charterer is within the exclusive jurisdiction of the courts of admiralty. We cannot attribute to the legislature an intention to limit or usurp the jurisdiction of the Federal courts. The section of the Arbitration Law (Section 3) under which the order herein was granted has been construed by us as a statutory legal remedy of a character unknown to the common law (*Matter of Berkovitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y. 261); it, therefore, is not embraced within the exceptions contained in the Judicial Code.

Counsel for the charterers urges that a remedy provided in the state court that makes available a remedy for the settlement of a maritime controversy through the specific performance of an agreement for that remedy is not an infringement of the jurisdiction of the Admiralty courts; that the charterers are not seeking a judgment for overpaid charter hire, etc., but an order decreeing that the arbitration proceed in the manner provided by

the contract. Even if we assume that the proceeding is practically one to enforce specific performance of the arbitration clause of the contract, an order granting such relief presupposes the existence of a controversy the subject-matter of which is within the jurisdiction of the court granting the order. It would be idle ceremony for the courts to grant an order requiring specific performance of an agreement to arbitrate a dispute, where upon an examination of the papers presented as the basis for such an order it is apparent that the subject-matter of the controversy which the " charterers " desire submitted to arbitration clearly arose under maritime clauses in a charter party over which the arbitrators could not assume jurisdiction even if arbitration was ordered.

In the present case, the agreement to arbitrate which is sought to be enforced is part of a maritime contract. It is contained in a charter party and such clause is void in the federal forum. ( *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co.,* 222 Fed. Rep. 1006, and cases cited therein.)

To sustain the arbitration clause and enforce the same in the state courts would deny to the federal court the exclusive jurisdiction with which Congress has clothed it, and likewise destroy a rule of uniformity. (*So. Pac. Co.* v. *Jensen,* 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149.)

The order appealed from should be reversed and the proceedings dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order reversed, etc.