## THE WILJA.
### DREYFUS et al. v. O/Y WIPU.
#### No. 393.

Circuit Court of Appeals, Second Circuit.
July 18, 1940.

Otto & Easterday, of New York City (Henry E. Otto and Samuel C. Otto, both of New York City, of counsel), for libellants-appellants.

Haight, Griffin, Deming & Gardner, of New York City (Herbert M. Statt and James McKown, Jr., both of New York City, of counsel), for O/Y Wipu, respondent-appellee.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libellant, a French copartnership doing business in New York, filed its libel to recover damages for breach of a contract, entered into August 17, 1939, in London, England, whereby the owner of the Finnish Steamship Wilja chartered her to the libellants to proceed from New York to Montreal, Sorel, Quebec or Three Rivers and there load grain and carry it to Cardiff, Barry, Swansea, London, Hull, Antwerp or Rotterdam, with an option of additional ports of destination, all in the British Isles. The rates of freight were specified in the charterparty.

Article 15 of the charter provided as follows: "Owner to declare laydays and cancelling dates to Louis Dreyfus & Co., London, as soon as he is in a position to do so. On receipt of such declaration, Messrs. Louis Dreyfus & Co. London to declare whether they will execute or whether they cancel this Charterparty."

The charter also provided at Article 16 as follows: "16. · Canadian Water Carriage Goods Act, 1936, * * * and Arbitration Clause No. 39 of the Centrocon C/Party to apply to this Charterparty."

Arbitration Clause No. 39 of the Centrocon Charterparty incorporated by the foregoing reference read thus: "39. All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single arbitrator, be referred to final arbitrament of two arbitrators carrying on business in London who shall be members of the Baltime and engaged in the shipping and/or grain trades. * * *"

The amended libel alleged that the need of libellants for the steamship to transport their cargo became so great that they afterwards agreed, conditional upon prompt performance of the contract of carriage, to pay approximately twice the original freight rates for the transportation of their cargo and on or about November 18, 1939, entered into a supplemental agreement with the respondent which provided that the charter should be so amended that they should pay the higher rates for freight and that the lay days and cancelling dates should be November 20, 1939, and November 28, 1939, respectively and that the respondent should cause the Wilja to proceed forthwith from New York to the St. Lawrence loading ports provided for in the original charter dated August 17, 1939, as amended November 18, 1939. The libel further alleged that the respondent neglected and refused to cause the Wilja to sail forthwith but instead caused her to stay at New York until about noon of November 20, 1939, and then to sail from New York but to return to that port within a few days. The libel finally alleged that the respondent violated its warranty that the Wilja was "tight, staunch and strong and in every way fitted for the voyage agreed upon" and that by reason of the failure and refusal of the respondent to perform its agreement the libellants were compelled to secure other transportation for the cargo at a rate greatly in excess of the rates agreed upon and thereby suffered damages in the amount of $60,000.

The libellants acquired jurisdiction of the Wilja by seizing her in the Eastern District of New York through process of foreign attachment. The vessel was thereupon released on bond and afterwards proceeded to sea under another charter and was sunk. After her return to New York in November she was under repair until the end of December, 1939.

The respondent moved that the court decline jurisdiction of the suit and also dismiss the libel on the ground that it did not state facts sufficient to constitute a cause of action and that the court lacked jurisdiction of the suit.

The affidavit of Fernand Leval was submitted on the argument and showed that on December 15 the proctors for the respondent had notified the proctors for libellants as follows:

"In response to your inquiry, we are instructed by owner to inform you that as United States ports are not within the range of the above charter party, owner declines to permit the vessel to load at New York or other U. S. Atlantic port.

"It seems to us that inasmuch as Montreal, the port to which the vessel was originally ordered and to which she proceeded, is now closed, performance under the above charter party has become impossible and that, accordingly, it should be agreed upon

**648**

between both parties that the charter party is terminated."

It also appears by the affidavit of libellants' proctor Henry E. Otto verified January 2, 1940, that the Wilja had been chartered to Messrs. Isbrandtsen-Moller at a higher rate than that agreed upon between the libellants and the owner for a voyage from New York to Antwerp/Rotterdam.

The District Judge, after argument of the motion, filed an opinion declining jurisdiction and relegating the parties to arbitration in London.

It seems clear to us that the libellants have shown that this is not a case in which the arbitration provided for in the charterparty can be regarded as a condition upon the maintenance of the cause of action. The record indicates that there was a repudiation of the amended charterparty by the respondent which was evidently doing everything it could to get higher freight rates on a rising market. Moreover it had already repudiated the original charterparty of August 17, 1939 for supposed lack of consideration and had entered into the amended one of November 18, 1939, upon obtaining from the libellants an agreement to pay about double the original freight rates. Even after obtaining this great concession the respondent soon began to insist that performance was impossible because it could not load the ship at Montreal as that port was closed for the winter and shortly afterwards took the technical position that it would not accept libellants' suggestion that it load their cargo at New York because under the terms of the charter it was not required to do so. It followed this by entering into engagements with a new charterer for another European voyage. Under such circumstances it seems clear that the arbitration clause had no application to the right of the libellants to maintain the present suit. The decision of the Supreme Court in The Atlanten, 252 U.S. 313, 40 S. Ct. 332, 64 L.Ed. 586, and the rulings of the House of Lords in Jureidini v. National British and Irish Millers Insurance Company, Limited (1915) A.C. 499, and Hirji Mulji v. Cheong Yue Steamship Company Limited (1926) A.C. 497, indicate that the parties should not have been relegated to London for arbitration. Before the libel was filed the charterparty had already been repudiated by the respondent, and the latter had insisted that the voyage was frustrated by the closing of the St. Lawrence

River for the winter. Accordingly the arbitration clause became wholly inapplicable to the case.

It is argued on behalf of the respondent that the motion of libellants in the District Court for a rehearing in order that they might obtain an order requiring security from the respondent that it would proceed to arbitrate in London estops it from questioning the latter's right to arbitration, but we can see no basis for such a contention. The making of the motion caused no prejudice to the respondent and worked no estoppel. Nor did it constitute an election which enlarged the scope of the clause for arbitration in the charterparty. As Holmes, J., said in The Atlanten, 252 U.S. 313, at page 316, 40 S.Ct. 332, 333, 64 L.Ed. 586: "The clause obviously referred to disputes that might arise while the parties were trying to go on with the execution of the contract—not to a repudiation of the substance of the contract * * *."

In view of the foregoing, we think there can be no doubt that the District Court has power to retain jurisdiction of the dispute even though between citizens of foreign states and to dispose of the litigation on the merits. In view of the widespread conflict in Europe and the chaotic conditions there it would seem a great hardship to the libellants for our courts to decline jurisdiction and thereby to require them to bring suit either in Finland or England. Proof of damages could apparently be readily obtained in New York. The repudiation of the charterparty occurred there and, if the seaworthiness of the vessel should become a factor in the litigation, proof of her condition could be most easily secured from New York witnesses, since the repairs were conducted there in November and December, 1939, and the condition of the Wilja must have been there known. But in order that the question of the propriety of retaining jurisdiction may be passed on by the District Court with all the proof on the subject which the parties may choose to present, we think it best, upon this reversal of the decree for error of law in relegating the parties to arbitration in London, to remand the cause to the District Court with directions to exercise its discretion in regard to retention of jurisdiction, and, if it should determine to retain jurisdiction, to decide the cause on the merits. This is in accord with the rule laid

down by the Supreme Court in Charter Shipping Company v. Bowring, Jones & Tidy, Limited, 281 U.S. 515, 50 S.Ct. 400, 74 L.Ed. 1008, and Canada Malting Co. v. Paterson Co., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837.

Decree reversed.