**HERCEG et al. v. SOCIEDET ARENA, Limited, et al.**

**THE BONITA.**

No. A–15935.

District Court, E. D. New York.

Oct. 19, 1940.

Ernest J. Pirman, of New York City, for libellants Bela Herceg and others.

Morris Cukor, of New York City, for libellants Istvan Renyi and others.

Dow & McAllister, of New York City, for claimant-respondents.

Melton, LeBovici & Arkin, of New York City, amicus curiae for Committee for European Seamen.

MOSCOWITZ, District Judge.

This is a motion by the respondents to decline jurisdiction of the action.

The libellants, twelve Hungarian seamen, brought this action for their wages, travel and repatriation expenses. The libellants signed a contract in Budapest, Hungary, before the Royal Hungarian Authority (who had charge of contracts in the hiring of seamen) to travel by rail to Le Havre, France, and there to sign on as members of the crew of the Panamanian steamer, "Bonita", for certain specified wages.

The libellants at Le Havre, France, signed on the "Bonita" before the Panamanian Consul. The contract for hiring contained the same provisions as to wages and other matters as the contract signed by them in Budapest. The "Bonita" with the libellants on board proceeded from Le Havre to New York, where she arrived on May 31st, 1940. Prior to the arrival of the "Bonita" her master prepared his alien crew manifest for the immigration authorities. Before so doing the libellants informed him that they intended to remain with the ship. This the master certified to the immigration authorities. As a result thereof, no men were detained under the

Immigration Act of 1924, 8 U.S.C.A. § 201 et seq.

Approximately two-thirds of all the wages due all the members of the crew were advanced to them the day following the "Bonita's" arrival. After the crew received their advances, a number of them, including all the libellants, asked that they be paid off in New York. The master informed them that this he could not do under the American law, and that he had advised the immigration authorities that they would continue on board. The libellants stated that unless they were paid off they would desert. The master thereupon went to the immigration authorities and advised them of the facts, and that he could no longer guarantee that the crew would remain on board ship. The immigration authorities advised the master that no detention order would be placed against the men as most of them had already left the ship.

At the time the cargo was loaded none of the libellants had returned to the ship. The master therefore was required to sign on a new crew at a much higher scale of wages, together with additional bonuses. After one week's delay the vessel sailed. When the vessel was ready to sail the libellants, through their attorneys, demanded to be paid off—this the master refused. Respondents then offered to pay libellants all wages due them, and on September 26, 1940, the proctor for the respondents advised the proctors for the libellants that the "Bonita" was presently laying in Norfolk, Virginia, and would be returning to Europe not later than September 30th, and should any of the libellants desire to return to this vessel, the master, who was then in New York, would take back any or all of them at their old jobs at the same rate of pay as at the time they left, and without any penalties on their part, and further to pay their expenses to Norfolk. On September 30th, 1940, proctor for the respondents was advised by libellants' proctors that none of the men wished to take advantage of this offer.

The libellants upon arrival in the United States, being deserters, obtained work in competition with American citizens. They are not entitled to a trial in the American courts as a matter of right. Such trial rests in the sound discretion of the court. They could have appeared before the Panamanian Consul or their own Consulate for a hearing. The fact remains that these libellants are foreign seamen who have deserted from the "Bonita", a foreign vessel in an American port. The courts of the United States should not be cluttered with such suits. If these libellants are given encouragement, other foreign seamen will be encouraged to follow their example. They have been offered all the money that is due them and their old jobs back. Their conduct does not appeal to this court. There is ample authority for declining jurisdiction. See The Prince Pavle, D.C., 32 F.Supp. 5; The Halcyon, D.C., 32 F.Supp. 8; Willendson v. Forsoket, 29 Fed.Cas. 1283, No. 17,682; The Robert Ritson, 20 Fed.Cas. p. 878, No. 11,895, 3 Fed.Cas. p. 15 note; The Belgenland (Jackson v. Jensen), 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152. The case of The Wilja, 2 Cir., 113 F. 2d 646, is not in conflict with the determination of this motion which is to decline jurisdiction.

To try the case here would prejudice the claimant as it appears that at the time the reply memorandum of the claimants was served the master was on the high seas bound for England, and that he and others on the ship were necessary and essential witnesses.

Motion to decline jurisdiction is granted.