**LIBBY, McNEILL & LIBBY, et al. v. BRISTOL CITY LINE OF STEAMSHIPS, Limited, et al.**

**PREMIER BOX CO., Limited, et al. v. SAME.**

District Court, S. D. New York.

July 10, 1941.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and John W. R. Zisgen, both of New York City, of counsel), for libellants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (L. de Grove Potter and Michael F. Whalen, both of New York City, of counsel), for Bristol City Line of Steamships, Ltd.

KNOX, District Judge.

Libellants are alleged owners of certain cargo that was lost when the British steamer "Sea Rambler" went to the bottom. One of the eleven libellants who are parties to the first libel (A 122—196) is Libby, McNeill & Libby (hereinafter designated as Libby, U.S.A.), a corporation organized under the laws of the State of Maine. The other libellants are either British or Canadian corporations. All libellants named in the second suit (A 122—200) are aliens. Except for the claim of Libby, U.S.A., both libels, for present purposes, may be treated as one.

All shipments, excluding that of Libby, U.S.A., originated in Canada, were laden on board at Halifax, and were destined to England. While en route, the steamer touched at no port within the United States. Shipping documents, aside from those of Libby, U.S.A., were all of Canadian origin.

The "Sea Rambler" was of British registry and owned by Dover Navigation Company, Ltd., a British corporation that has neither appeared nor been served with process. The vessel was under time-charter to Bristol City Line of Steamships, Ltd., likewise a British corporation, the document having been executed in England. Inasmuch as the latter company has a place of business and a general agent located within the jurisdiction of this Court, it was amenable to process and has been served. From the foregoing recital, it will be observed that were it not for the presence of Libby, U.S.A., the Court's exercise of jurisdiction in these suits would be wholly discretionary.

In this connection, it may be added that all witnesses who can throw light upon the disaster that overtook the steamer are either in Canada, England, or upon foreign vessels. Dover Navigation Co., Ltd., does not trade with the United States, but does perform transportation service between England and Canada. Attention should also be directed to the fact that, within the Courts in England, at least three of the present libellants are now prosecuting claims against the respondents here named.

Under the circumstances, Bristol City Line of Steamships, Ltd., asks this Court to decline jurisdiction as a forum of convenience, and remit the parties to the courts of their own countries, where foreign law governing the situation may more readily be applied. See Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837; Charter Shipping Co. v. Bowring Jones, etc., 281 U.S. 515, 50 S.Ct. 400, 74 L.Ed. 1008; The Maggie Hammond, 9 Wall. 435, 19 L. Ed. 772; United States Merchants', etc. v. A/S Den Norske Afrika, etc., 2 Cir., 65 F.2d 392; The Belgenland, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; The Beaverbrae, D.C., 60 F.2d 363, 1931 A.M.C. 1545; The Lady Drake, D.C., 1 F.Supp. 317; Wittig v. Canada S. S. Lines, Ltd., D.C., 59 F.2d 428; The Solhavn, 1939 A.M.C. 456; Watt & Scott v. City of Agra, D.C., 35 F.Supp. 351, 1940 A.M.C. 1316; The Wilja, 2 Cir.,

113 F.2d 646, 1940 A.M.C. 1288, 1291; Insurance Company of North America v. British India Steam Navigation Co., Ltd., D.C.E.D.La., April 10, 1941, 38 F.Supp. 47, by Borah, D. J.

Were it not for the insistence of Libby, U.S.A., that this Court is in duty bound to hear its cases upon the merits, I would unhesitatingly grant the motions made by respondents.

Whether, as matters stand, this can properly be done depends upon the conclusion to be reached upon the somewhat peculiar arrangements under which Libby, U.S.A., became a litigant.

The corporation has its principal place of business in Chicago. One of its subsidiaries is Libby, McNeill & Libby of Canada, Ltd. Another is of English origin, and bears the name of Libby, McNeill & Libby, Ltd. Hereafter it will be designated as Libby, Ltd.

In December, 1939, Libby, U.S.A., received cabled orders for merchandise from Libby, Ltd. On January 12, 1940, the goods moved from Chicago by rail, bound to Halifax, to the order of the Bristol City Line of Steamships, Ltd., "for export, destination England, permit #7500," and were covered by the usual I.C.C. bill-of-lading. Terms of sale were C.I.F. Swansea, and C.I.F. Bristol.

In order to export the shipments, Libby, U.S.A., was required to comply with the provision of Section 2(c) of the Neutrality Act of November 4, 1939, 22 U.S.C.A. § 245j—1(c). One of the requirements was that a shipper should make, under oath, an export declaration certifying that "all right, title and interest to the goods described * * * in the declaration has passed to a foreign purchaser, unconditionally, and all right, title and interest is now vested in some foreign * * * corporation * * *" It was further certified that Libby, U.S.A., "has complied with * * * rules and regulations which have been * * * promulgated pursuant to the Neutrality Act of 1939", 22 U.S.C.A. § 245 j—1(c).

Such a certificate was filed by Libby, U. S.A., with the Collector of Customs at Port Huron, Michigan. The statute in question provides "that it shall be unlawful to export or transport, or attempt to export or transport, or cause to be exported or transported, from the United States to any state named in such proclamation, any articles or materials * * * until all right, title, and

interest therein shall have been transferred to some foreign government, agency, institution, association, partnership, corporation, or national. * * * The shipper of such articles or materials shall be required to file with the collector of the port from or through which they are to be exported. a declaration under oath, that he has complied with the requirements of this subsection with respect to transfer of right, title, and interest in such articles or materials, * * *. Any such declaration so filed shall be a conclusive estoppel against any claim of any citizen of the United States of right, title, or interest in such articles or materials, if such citizen had knowledge of the filing of such declaration; and the exportation or transportation of any articles or materials without filing the declaration required by this subsection shall be a conclusive estoppel against any claim of any citizen of the United States of right, title, or interest in such articles or materials, if such citizen had knowledge of such violation."

■ When the goods reached Halifax, they went aboard the "Sea Rambler" against ocean bills-of-lading issued in the name of Libby, U.S.A., and which showed the consignee as Libby, McNeill and Libby, England. Undoubtedly the real consignee was Libby, Ltd., and in view of the export declaration of Libby, U.S.A., it must conclusively be presumed that complete title to the goods vested in the English corporation, at the time they were delivered to the rail carrier in Chicago.

The merchandise went on board the ship some time prior to February 5, 1940, when she broke ground for England. The boat sank four or five days thereafter and the goods were totally lost.

. Upon March 26, 1940, Libby, Ltd., not knowing of the loss of the vessel, remitted the purchase price of the goods to Libby, U.S.A., and upon the seventh of the following May, requested that the same be returned to it. By check, dated May 21, Libby, U.S.A., complied with such request. However, upon April 9, Libby, U.S.A., had been indemnified by the underwriter that was liable for the loss, the parties having entered into a subrogation agreement which stated: "We (Libby U.S.A.) hereby guarantee that we are the persons entitled to enforce the terms of the contract of transportation set forth in the bills of lading covering the said property."

The affidavits also show that some time after April 9, 1940, Libby, Ltd., returned to Libby, U.S.A., all documents necessary for presentation of claim under the insurance policy. Libby, U.S.A., then made claim under the policy, and received payment thereon. All this, as is obvious, was that Libby, U.S.A., "decided * * * it would be easier and more satisfactory to collect the claim under the insurance policy in the United States rather than in England. Libby McNeill & Libby, Ltd. concurred in this decision * * *".

The basis upon which libellants request this Court to retain jurisdiction is that what has taken place between Libby, U.S.A., and Libby, Ltd., is, in effect, a rescission of the sale of the goods, and that under Transmarine Corp. v. Charles H. Levitt & Co., 2 Cir., 25 F.2d 275, and American Railway Express Company v. Island & Gypsum Fruit Company, 6 Cir., 300 F. 311, this court necessarily must deny the instant motion.

If, after title to merchandise has passed from a vendor to a vendee, the goods themselves are utterly and completely lost, it is impossible for me to conceive that there can be a rescission of the original sale. In this case, the goods lie upon the ocean bed of the North Atlantic. Consequently, they cannot serve as consideration for a rescission. Being unrecoverable, there has been, as it were, a failure of consideration. The position of this libellant is much more like that of an assignee of Libby, Ltd. Whether the transaction is of that exact nature is open to doubt. But, whatever may be its proper classification, it is clear that Libby, U.S.A., if the suits be retained, will be in Court, not as a matter of original right, but upon sufferance. See United States Merchants, etc., v. A/S Den Norske, etc., 2 Cir., 65 F.2d 392; Goldman v. Furness, Withy & Company, D.C., 101 F. 467. Furthermore, bearing the Neutrality Act in mind, it is quite possible that Libby, U.S.A., is without right to assert any claim with respect to the goods. Upon this point, I pass no judgment.

■ At all events, I think these suits may more properly, conveniently and quickly be tried in either Canada or England. The persons who best know the facts are there to be found; a number of them are upon British ships. If the Government of Britain so desires, it can cooperate with the parties in making such persons available for examination. It is improbable that

they could be brought here—certainly they are not subject to the process of this Court. Elsewhere, they may be. In consideration of all factors, I will decline to exercise jurisdiction over the pending suits upon condition that the moving respondent stipulate that, in the suits to be promptly brought elsewhere, it will not plead as a defense the fact, that through delay in their institution, the suits are, or may be, outlawed. Unless such stipulation be made, respondent's motions will be denied.