### Petition of PAHLBERG.

## BULK CARRIERS CORPORATION v. KASMU LAEVA OMANIKUD (O. TIEDEMANN).

District Court, S. D. New York.

Feb. 26, 1942.

762

Haight, Griffin, Deming & Gardner, of New York City (Herbert M. Statt, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Charles R. Hickox, of New York City, of counsel), for petitioner.

HULBERT, District Judge.

This petition is presented under Section 4 of the United States Arbitration Act of February 12, 1925, Title 9 U.S.C.A. § 4.

The petitioner is a member of a partnership doing business under the name of Kasmu Laeva Omanikud (O. Tiedemann) owners of the Estonia Steamship "Hildur" (hereinafter referred to as "Owners").

On the 25th day of November, 1939, the Owners by a written charter party executed at New York, N. Y., agreed to let and Bulk Carriers Corporation, as time charterer (hereinafter referred to as Charterer), agreed to hire the said steamship for a period of three consecutive months, to be employed in lawful trades between ports in the United States and other ports in the Western Hemisphere not south of Buenos Aires, upon terms and conditions set forth in the charter party.

The vessel was to be placed at the disposal of Charterer at Baltimore, Maryland, not before Jan. 4, 1940, and not later than Jan. 31, 1940, which latter date was, by an addendum dated at New York, April 4, 1940, extended to and including May 15, 1940.

The vessel never was delivered by the Owners.

The charter party contained the following clause:

"17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen, their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

The Owners seek an order that Charterer proceed to arbitration of a dispute concerning Owners' liability to Charterer for the non-delivery of the vessel in the manner provided by clause 17.

Prior to 1925 there was no federal legislation on the subject of arbitration and it is an historical fact that our courts, generally speaking, had not looked with favor upon arbitration agreements. They had never denied that an agreement to arbitrate created a right but public policy was thought to forbid specific performance. Hamilton v. Home Ins. Co., 137 U.S. 370, 11 S.Ct. 133, 34 L.Ed. 708; Finucane v. Board of Education, 190 N.Y. 76, 82 N.E. 737.

The charter involved in The Atlanten, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586. decided March 22, 1920, provided for arbitration "if any dispute arises."

Mr. Justice Holmes wrote in that case at page 316 of 252 U.S., at page 333 of 40 S.Ct.: "The clause obviously referred to disputes that might arise while the parties were trying to go on with the execution of the contract—not to a repudiation of the substance of the contract as it is put by Lord Haldane in Jureidini v. National British & Irish Millers Insurance Company, Ltd., (1915) A.C. 499, 505."

The Arbitration Law of New York, Consol.Laws, c. 72, was enacted April 19, 1920, by Chapter 275 and amended Mar. 1,

1921, by Chapter 14 and declared that a provision in the written contract to settle by arbitration a controversy thereafter arising between the parties "shall be valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2.

The New York Court of Appeals, in Red Cross Line v. Atlantic Fruit Co., 233 N.Y. 373, 135 N.E. 821, held that the controversy involved was one of Admiralty; that under Article III, Section 2 of the Federal Constitution and Section 256, Clause Third, of the Judicial Code, 28 U.S.C.A. § 311, subd. 3, such controversies were within the exclusive jurisdiction of the Admiralty courts and the State of New York had no power to compel the charter owner to proceed to arbitration. On certiorari to the Supreme Court the judgment was reversed, 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582. Mr. Justice Brandeis said at page 125 of 264 U.S., at page 278 of 44 S.Ct.:

"As the constitutionality of the remedy provided by New York for use in its own courts is not dependent upon the practice or procedure which may prevail in admiralty, *we have no occasion to consider whether the unwillingness of the federal courts to give full effect to executory agreements for arbitration can be justified.*" (Italics for emphasis.)

The first case to come up, at least in this Circuit, after the United States Arbitration Act became a law, was In re Utility Oil Corporation, D.C., 10 F.Supp. 678; Id., 2 Cir., 69 F.2d 524; certiorari denied Petroleum Nav. Co. v. Utility Oil Corp., 292 U.S. 655, 54 S.Ct. 866, 78 L.Ed. 1504.

In that case the Court of Appeals very clearly indicated its opinion that the United States Arbitration Act was intended to change the view expressed in The Atlanten, supra, the Red Cross Line v. Atlantic Fruit Co., supra, and Marine Transit Corp. v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 516.

In the later case of In re Canadian Gulf Line, 2 Cir., 98 F.2d 711, 714, which involved an arbitration clause in identical language with the clause here involved, the court said: "We can have little doubt that the parties had in mind and expressed by the words 'should any dispute arise' in clause 17 an intention to submit to arbitration, rather than to judicial decision, any disputes arising out of the maritime venture initiated by the charter party. * * *"

The opinion of the court continues:

"Disputes here arose out of a 'maritime transaction' and there was an agreement stated in the broadest terms to submit such disputes to arbitration.

"Arbitration sometimes involves perils that even surpass the 'perils of the seas'. Cf. Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, 169 N.E. 386. Whether in any particular instance it is a desirable risk is not for us to say. It is a mode of procedure fostered by statute and in the present case invoked under the agreement of the parties. If they consent to submit their rights to a tribunal with extensive powers and subject to a most restricted review, they cannot expect the courts to relieve them from the effect of their deliberate choice."

In this connection it is interesting to examine the Report of the House Committee on Judiciary[1] which considered and

---

[1] Com.Rep. 96, 68th Cong. 1st Session, accompanying H.R. 646—U.S. Arbitration Act of Feb. 12, 1925, the purpose of which as therein stated was "to make valid and enforcible agreements for arbitration in contracts * * * within the jurisdiction of admiralty or which may be the subject of litigation in the federal courts. * * *"

The Report further states:

"Whether an agreement for arbitration shall be enforced or not is a question of procedure to be determined by the law court in which the proceeding is brought and not one of substantive law to be determined by the law of the form in which the contract is made. * * * The bill declares that such agreements shall be recognized and enforced by the Courts of the United States * * * and the effect of the bill is simply to make the contracting party live up to his agreement. * * * An arbitration agreement is placed upon the same footing as other contracts, where it belongs * * *. Some centuries ago, because of jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction. This jealousy survived for so long a period that the principle became firmly embedded in the English common law and was adopted with it by the American courts. The courts have felt that precedent was too strongly fixed

reported the bill enacted into law as the United States Arbitration Act.

The Charterer contests the right of the Owners to have, or the power of the court to compel, arbitration upon the ground that this court has already ruled to the contrary and its decision is res adjudicata.

On August 20, 1941, a libel was filed in this court by Bulk Carriers Corp., against Kasmu Laeva Omanikud (O. Tiedemann) to recover $25,000 and alleged refusal to deliver the Steamship Hildur pursuant to the terms of the charter.

As a matter of fact, a prior suit had been commenced by Charterer for damages on May 21, 1940 by attachment at New Orleans, La., of the Steamship Elna, also one of the Owners' vessels. That suit, apparently, was discontinued by agreement, the Owners having deposited security and undertaking to appear when libel was filed in this district.

On August 26, 1941, the Owners demanded arbitration, notified the proctors of the Charterer it maintained said right, gave notice of the appointment of its arbitrator and requested the Charterer to do likewise. By letter dated Aug. 27, 1941, the Charterer declined to arbitrate the dispute, alleging that the Owners had repudiated the charter party and hence the arbitration clause.

Thereupon the Owners moved, pursuant to Sec. 3 of the United States Arbitration Act, for an order staying all proceedings in this suit until the hearing of the issue of arbitration in accordance with clause 17.

The moving affidavit of the Owners sets forth that the Steamship Hildur left Tallinn, Estonia, on Dec. 1, 1939, on her way to the United States for delivery to the Charterer. She was obliged to put into Lubeck, Germany, by the naval authority of the German Reich and was detained there from Dec. 5 to the beginning of March, 1940. Owing to the condition of heavy ice in the Baltic, the vessel upon her release was unable to proceed on her voyage and went to Malmo, Sweden, where she took on some provisions and stores, and then proceeded toward Baltimore for delivery (But for the extension of the delivery date as provided for in the addendum to the charter, previously mentioned, the Owners would have then been in default). While thus proceeding through the Baltic, the vessel encountered heavy ice and broke her propellor and put into Goteborg, Sweden, for repairs. While at that port undergoing repairs, Germany invaded Norway and refused to permit any vessel to proceed through the Kattegat and Skaggerak westward to the North Sea. On or about Sept. 5, 1940, while still at Goteborg the vessel was taken over and removed by authority of the Russian government to Tallinn.

■ In determining whether there was cause to arbitrate under the contract sued on, the court was required to take the moving party's version of the issue. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, certiorari granted 293 U.S. 541, 55 S.Ct. 95, 79 L.Ed. 647, and affirmed 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583.

■ Upon the argument of that motion the Charterer relied upon The Wilja, 2 Cir., 113 F.2d 646 on which the Court of Appeals based its decision upon The Atlanten, supra, and the rulings of the House of Lords in Jureidini v. National British & Irish Millers Ins. Co., supra, and Hiriji Mulji v. Cheong Yue Steamship Co. Ltd., 1926, A.C. 497; this court, therefore, felt impelled to deny the motion for a stay upon the authority of The Wilja, supra, regarding the motion as a request by the Owners for a stay under Section 3 without contemporaneous action to compel arbitration under Section 4.

It is contended by the Charterer that the intention of Congress was that Section 3 constitutes an exclusive remedy after suit brought, whereas Section 4 affords an exclusive remedy when no suit has been instituted.

■ I am unable to agree. As a matter of fact the statute expressly authorizes the filing of a libel and then proceedings to compel arbitration with a reservation of jurisdiction to enforce the award when made. Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989. There is nothing in the Act which prevents the other party from seek-

---

to be overturned without legislative enactment, although they have frequently criticized the rule and recognized its illogical nature and the injustice which results from it. The bill declares simply that such agreements for arbitration shall be enforced and provides a procedure to the Federal courts for their enforcement * * *".

ing arbitration after suit brought. In fact, there is authority to the contrary, upon a record which Judge Foster terms unsatisfactory, in La Nacional Platanera S. C. L. v. North American Fruit & Steamship Corp., 5 Cir., 84 F.2d 881.

The Charterer has neither argued nor urged that the stipulation discontinuing the prior suit in New Orleans · was a waiver or an estoppel by the Owners.

The motion to ·compel Charterer to appoint an arbitrator and proceed to arbitration is granted. Settle order on notice.